1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOMESITE INSURANCE COMPANY OF
THE MIDWEST, a Wisconsin corporation,

        Plaintiff,

    v.

ROBERT HOWELL, JR., a single individual;
ROBIN HOWELL and ROBERT HOWELL,
SR., a married couple; and SIERRA PACIFIC
LAND & TIMBER COMPANY, a California
corporation,

        Defendants.

NO.

**COMPLAINT FOR DECLARATORY
JUDGMENT**

## I.     PARTIES

1.    Plaintiff Homesite Insurance Company of the Midwest ("Homesite") is a Wisconsin corporation with its principal place of business in Massachusetts.

2.    Upon information and belief, Defendant Robert Howell Jr. ("Howell Jr.") is a single individual and resides in Whatcom County, Washington.

COMPLAINT FOR DECLARATORY JUDGMENT - 1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

3.      Upon information and belief, Defendants Robin Howell ("Ms. Howell") and Robert Howell Sr. ("Howell Sr.") (collectively, "the Howells") are a married couple and reside in Whatcom County, Washington.

4.      Upon information and belief, Defendant Sierra Pacific Land & Timber Company ("SPLT") is a California corporation.

## II.      VENUE AND JURISDICTION

5.      The U.S. District Court in the Western District of Washington has jurisdiction pursuant to 28 U.S.C. § 1332.  There is complete diversity between the parties, and based on information and belief, the amount in controversy exceeds $75,000, exclusive of costs and interest.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in Whatcom County, Washington.

## III.      FACTS

**A.      The Underlying Lawsuit**

7.      On or about December 3, 2020, SPLT filed a Complaint to Quiet Title against Howell Jr., captioned as *Sierra Pacific Land & Timber Company v. Robert Howell, Jr.,* Superior Court of the State of Washington, Whatcom County, Case No. 20-2-01247-37 (the "Underlying Lawsuit").  Homesite was not informed about the Underlying Lawsuit until early July 2021. Attached hereto as **Exhibit A** is a copy of the Complaint filed in the Underlying Lawsuit.

8.      SPLT alleges that it is the owner of certain property described in the Underlying Lawsuit by tax parcels ("SPLT Property").  It alleges that the Howells purchased neighboring property located at 4890 Mosquito Lake Road, Deming, Washington ("4890 Property") in 1976.

9.      SPLT alleges that the 4890 Property has a small hydroelectric plant that draws water from natural streams on the SPLT Property through a series of water intakes and water pipelines to serve the hydroelectric plant.  It alleges that SPLT's predecessor, Georgia-Pacific

COMPLAINT FOR DECLARATORY JUDGMENT - 2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

1  Corporation ("GPC"), granted a non-exclusive easement in gross ("Easement") to the Howells
2  in 1978, and that pursuant to a divorce decree, Ms. Howell acquired the 4890 Property from
3  Howell Sr. in 2014.

4       10.    SPLT alleges that the Easement allowed the construction, use, and maintenance
5  of a water pipeline over parts of the SPLT property, and specifically allows construction, repair,
6  maintenance, service, and operation of a water pipeline over an area 10 feet wide by 450 feet
7  long on the SPLT Property.

8       11.    SPLT alleges that the Easement terminates automatically if the grantees (the
9  Howells) fail to use it for any continuous period of twenty-four (24) months.  SPLT alleges that
10 Howell Sr. was allowed to lay water intakes and water pipeline in other locations outside the
11 Easement area on the SPLT Property so long as the pipeline, and any associated construction,
12 repair, maintenance, service, and operation, did not interfere SPLT's and GPC's forest practice
13 operations.

14      12.    SPLT alleges that Howell Sr. laid several thousands of feet of water pipeline on
15 the SPLT Property outside the Easement area ("Water Pipelines"). It alleges that the Water
16 Pipelines were used to provide water to the 4890 Property for use at its small hydroelectric plant,
17 and were not used to provide domestic water to the 4890 Property or to other property owned by
18 members of the Howell family immediately west of the 4890 Property.

19      13.    SPLT alleges that Howell Sr. informed John Gold of SPLT in early November
20 2015 that Howell Sr. had abandoned the Easement and Water Pipelines, and that SPLT was free
21 to do what it wanted with the entire system.

22      14.    SPLT alleges that the Water Pipelines were out of operation at that time, and that
23 the Easement and Water Pipelines remained abandoned for twenty-four (24) months.  It alleges
24 that the Easement automatically terminated in 2016 or 2017.

25

COMPLAINT FOR DECLARATORY JUDGMENT - 3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

15.    SPLT also alleges that the Easement was granted in gross to Howell Sr. and Ms. Howell, and it claims that Howell Jr. does not have any rights under the Easement.  SPLT claims that it is unaware of any instrument conveying the rights contained in the Easement to Howell Jr., and that it did not give permission to Howell Jr. to work on or utilize the Water Pipelines on the SPLT Property outside the Easement area.

16.    SPLT alleges that Howell Jr. acquired the 4890 Property from Ms. Howell by Quit Claim Deed in 2018.

17.    SPLT alleges that "around 2018 or thereafter," Howell Jr. allegedly undertook various construction-related activities on the SPLT Property.  These activities apparently continued from 2018 through August 2020, and possibly later.  SPLT alleges that this work, and other nearby work that included digging, caused damage to an active logging road, and left open a trench adjacent to the logging road.

18.    SPLT alleges that Howell Jr. did not acquire any permits to conduct this work, and that this work created a hazard to people and property, including damaging the land itself. It also alleges that Howell Jr. stockpiled unused pipe near a private logging road in at least two locations, and deposited construction debris and garbage at multiple locations in proximity to the Water Pipelines.  SPLT also alleges that Howell Jr. used motor vehicles and heavy equipment on and throughout the SPLT Property.

19.    SPLT claims that it sent Howell Jr. a cease and desist letter on September 16, 2020, that described the trespass and demanded that Howell Jr. cease and desist the trespass and remove all materials, equipment, and belongings from the area of trespass by September 23, 2020.

20.    SPLT alleges that Howell Jr. was in communication with SPLT through counsel to address the issues raised in the cease and desist letter, though no resolution was reached and the trespass continued until the time that the Underlying Lawsuit was filed.

COMPLAINT FOR DECLARATORY JUDGMENT - 4

1

2      21.     The Underlying Lawsuit contains the following causes of action against Howell

3 Jr.: (1) quiet title; (2) ejectment; (3) trespass; (4) waste; (5) nuisance; and (6) negligence.

4 **B.     The Homesite Policies**

5      22.     Homesite first issued a Progressive Home Advantage Policy No. 31835622 to

6 Howell Sr. and Ms. Howell for the policy period of February 25, 2012 through February 25,

7 2013.  This policy was renewed annually from February 25, 2013, and the most recent policy

8 has an ending policy period date of February 25, 2022 (collectively, "the Policies").

9      23.     None of the Policies mention Howell Jr. as an insured.

10      24.     The "Insured Location" listed in each of the Policies' Declarations is 4848

11 Mosquito Lake Road, Deming, Washington ("4848 Property").  It is described as a single family

12 home and primary residence.

13      25.     The Underlying Lawsuit was filed during the Homesite policy period of February

14 25, 2020 to February 25, 2021 ("2020-2021 Policy").  Attached hereto as **Exhibit B** is a copy of

15 the 2020-2021 Policy.  Homesite subsequently issued a policy with a policy period of February

16 25, 2021 to February 25, 2022 ("2021-2022 Policy").

17      26.     The 2020-2021 Policy contains an "Important Messages" form, which states as

18 follows:

19           We relied on the information you provided to underwrite and issue
20           your insurance policy.  Making sure the information we have about
             you is correct and up-to-date will ensure your home is adequately
21           protected.  Please review your "Declarations" page and check the
             description of your dwelling, occupancy, deductibles, coverages,
22           and contracts and amendments.  If any of this information needs to
23           be corrected, you must advise us within 30 days of receipt.

24           You stated that:

25

COMPLAINT FOR DECLARATORY JUDGMENT - 5                **Williams, Kastner & Gibbs PLLC**
                                                      601 Union Street, Suite 4100
                                                      Seattle, WA 98101-2380
                                                      (206) 628-6600

7462085.2

- you occupy the insured property and do not rent out to more than two (2) roomers/boarders

- no business with more than two (2) visitors per week is conducted on the premises**

- no commercial or retail farming is conducted on the premises

- you do not have a dog that has ever bitten a person

27.     The 2020-2021 Policy provides liability coverage under Homeowners 3 Special Form HO 00 03 08 96, and provide, in relevant part, as follows:

### SECTION II – LIABILITY COVERAGES

### COVERAGE E – PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability.

. . .

28.     The Policies contain the following exclusions:

1.  **Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

COMPLAINT FOR DECLARATORY JUDGMENT - 6

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

    **a.** Which is expected or intended by one or more **insureds**;

    **b.** Arising out of or in connection with a **business** engaged in by an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business**; . . .

    **e.** Arising out of a premises:

      (1) Owned by an **insured**;

      (2) Rented to an **insured**; or

      (3) Rented to others by an **insured**;

      That is not an **insured** location

    **f.** Arising out of:

      (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owner or operated by or rented or loaned to an **insured** . . .

29.    The 2020-2021 Policy contains the following pertinent definitions:

    **3. Business**[1] means:

    a.  A trade, profession, occupation, or enterprise engaged in on a full-time, part-time or occasional basis;

---

[1] As amended by endorsement HH 01 46 06 15 (2020-2021 Policy).

COMPLAINT FOR DECLARATORY JUDGMENT - 7

b.  The lease of land, buildings, structures or personal property; or

c.  Any other activity engaged in for money, expectation of renumeration or monetary gain, or other compensation, financial or otherwise, except the following:

(1) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity; . . .

5.  **Insured** means you and residents of your household who are:

a.  Your relatives; or

b.  Other persons under the age of 21 and in the care of any person named above.
. . .

6.  **Insured location** means:

a.  The **residence premises**;

b.  The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c.  Any premises used by you in connection with a premises described in **6.a.** or **6.b.** above;

d.  Any part of a premises:

(1) Not owned by an insured; and

COMPLAINT FOR DECLARATORY JUDGMENT - 8

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

(**2**) Where an insured is temporarily residing;

e.  Vacant land, other than farmland, owned by or rented to an insured;

. . .

7.  **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a.  **Bodily injury**; or

b.  **Property damage**.

8.  **Property damage** means physical injury to, destruction of or loss of use of tangible property.

. . .

11. **Residence premises** means:

a.  The one-family dwelling, other structures, and grounds; or

b.  That part of any other building;

where you reside; and which is shown as the **residence premises** in the Declarations.

**Residence premises** also means a two family dwelling where you reside in at least one of the family units and which is shown as the **residence premises** in the Declarations.

30.  The 2020-2021 Policy contains certain conditions, including the following:

**SECTION II – CONDITIONS**

…

3.  **Duties After Loss**

COMPLAINT FOR DECLARATORY JUDGMENT - 9

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

In case of an accident or **occurrence**, the **insured** will perform the following duties that apply. You will help us by seeing that these duties are performed:

**a.** Give written notice to us or our agent as soon as is practical, which sets forth:

**(1)** The identity of the policy and **insured**;

**(2)** Reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

**(3)** Names and addresses of any claimants and witnesses;

**b.** Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

**c.** At our request, help us:

**(1)** To make settlement;

**(2)** To enforce any right of contribution or indemnity against any person or organization who may be liable to an insured;

**(3)** With the conduct of suits and attend hearings and trials; and

**(4)** To secure and give evidence and obtain the attendance of witnesses;

**d.** Under the coverage - Damage To Property Of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the **insured's** control;

**e.** The **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur

COMPLAINT FOR DECLARATORY JUDGMENT - 10

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

expense other than for first aid to others at the time of the **bodily injury**.

…

**SECTION I AND II – CONDITIONS**

…

2.  **Concealment or Fraud**

. . .

    b.  Under Section **II** – Liability Coverages, we do not provide coverage to one or more **insureds** who, whether before or after a loss, have:

        (1) Intentionally concealed or misrepresented any material fact or circumstance; or

        (2) Engaged in fraudulent conduct;

        Relating to this insurance.

. . .

31.     The 2020-2021 Policy contains the following limited coverage for damage to property of others:

3.  **Damage to Property of Others**

We will pay, at **replacement cost**, up to $500 per **occurrence** for **property damage** to property of others caused by an **insured**.

We will not pay for **property damage**:

    a.  To the extent of any amount recoverable under Section I of this policy;

    b.  Caused intentionally by an **insured** who is 13 years or older;

COMPLAINT FOR DECLARATORY JUDGMENT - 11

**c.** To property owned by an **insured**;

**d.** To property owned by or rented to a tenant of an **insured** or a resident in your household; or

**e.** Arising out of:

**(1)** A **business** engaged in by an **insured**;

**(2)** Any act or omission in connection with a premises owned, rented, or controlled by an **insured**, other than the **insured location**; or

**(3)** The ownership, maintenance, or use of aircraft, watercraft or motorvehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance which is designed and used exclusively for recreational purposes off public roads, not subject to licensing requirements and not owned by an insured.

. . .

**C.**     **Homesite Agreed to Defend Howell Jr. Under a Full Reservation of Rights**

32.     On or about July 2, 2021, Howell Jr. tendered the defense of the claims in the Underlying Lawsuit to Homesite.

33.     Prior to the tender of the Underlying Lawsuit, Homesite received a call from Ms. Howell on June 25, 2021, which was after the Lawsuit was filed.  During this call, Ms. Howell requested a change in the Insured Location for the 2021-2022 Policy to the 4890 Property.

34.     Via letter dated June 29, 2021, Homesite issued revised declarations reflecting the change in the insured property for the 2021-2022 Policy effective as of June 25, 2021.

COMPLAINT FOR DECLARATORY JUDGMENT - 12

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

35.     On July 6, 2021, Homesite received another call to amend the named insured from Howell Sr. to Howell Jr.

36.     Via letter dated July 10, 2021, Homesite issued a revised declaration updating the named insured for the 2021-2022 Policy to Howell Jr. effective July 7, 2021.

37.     On September 20, 2021, Homesite sent a letter to Howell Jr. informing them that Homesite agreed to defend Howell, subject to a full reservation of Homesite's rights under the 2020-2021 Policy.  Attached hereto as **Exhibit C** is a copy of Homesite's reservation of rights letter.

## IV.     FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT<br>WHO IS AN INSURED

38.     Homesite realleges each of the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

39.     Liability coverage under the 2020-2021 Policy is provided if a claim is made or a suit is brought against an "insured" for damages because of property damage that occurs during the policy period, subject to the Policies' terms, conditions, and exclusions.  "Insured" is defined in part as "you" and residents of your household who are your relatives.  "You" refers to the "named insured" shown in the Policy Declarations.

40.     The "named insureds" in the Declarations for the 2020-2021 Policy, and the Policies that predate it, are Howell Sr. and Ms. Howell.

41.     The 2020-2021 Policy was the policy effective when the Underlying Lawsuit was filed.

42.     Howell Jr. was not listed as a named insured under the 2020-2021 Policy or any of the Policies that predate it.

COMPLAINT FOR DECLARATORY JUDGMENT - 13

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

43.     Upon information and belief, neither Howell Sr. nor Ms. Howell occupied the 4848 Property at the time of the events described in the Underlying Lawsuit or at the time the Underlying Lawsuit was filed.

44.     Howell Jr. was added to the 2021-2022 Policy as a named insured on July 7, 2021. This change was effective several months after the Underlying Lawsuit was filed.

45.     There are no allegations in the Underlying Lawsuit that any "occurrences" or "property damage" occurred during the 2021-2022 Policy.

46.     Homesite is entitled to declaratory judgment that Howell Jr. does not qualify as an "insured" under the 2020-2021 Policy and all of the Policies that predate it.

47.     Homesite is entitled to declaratory judgment that the 2021-2022 Policy, which was not effective until after the Underlying Lawsuit was filed, does not provide coverage.

48.     Homesite is entitled to declaratory judgment that, because Howell Jr. is not an "insured" under any the Policies, it owes no duty to provide defense or indemnity coverage to him in the Underlying Lawsuit.

## V.     SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT CHANGE OF "INSURED LOCATION"

49.     Homesite realleges each of the allegations contained in Paragraphs 1 through 48 as if fully set forth herein.

50.     The 2020-2021 Policy, and all Policies issued before it, list the 4848 Property as the "insured location."

51.     The Underlying Lawsuit does not implicate the 4848 Property.

52.     The Underlying Lawsuit does not mention the 4848 Property.

53.     The Underlying Lawsuit only mentions the 4890 Property.

54.     The 4890 Property is not listed on any of the Policies.

COMPLAINT FOR DECLARATORY JUDGMENT - 14

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

55.     Ms. Howell contacted Homesite over six (6) months after the Underlying Lawsuit had been filed, and prior to tender of the Underlying Lawsuit to Homesite, to change the "insured location" from the 4848 Property to the 4890 Property on the 2021-2022 Policy.

56.     This change was not effective until June 25, 2021, and was not retroactive.

57.     None of the claims or facts alleged in the Underlying Lawsuit, or any alleged "property damage," occurred after June 25, 2021.

58.     Homesite is entitled to declaratory judgment that there is no coverage under the 2020-2021 Policy, and all Policies issued before it, in regard to the Underlying Lawsuit, because the Underlying Lawsuit does not implicate the "insured location" named in those policies, *i.e.*, the 4848 Property.

59.     Homesite is also entitled to declaratory judgment that there is no coverage under the 2021-2022 Policy in regard to the Underlying Lawsuit after the "insured location" was amended on June 25, 2021, because none of the claims or facts alleged in the Underlying Lawsuit occurred after the change in "insured location."

## VI.     <u>THIRD CAUSE OF ACTION</u>: DECLARATORY JUDGMENT OCCUPATION OF "INSURED LOCATION" BY HOWELLS

60.     Homesite realleges each of the allegations contained in Paragraphs 1 through 59 as if fully set forth herein.

61.     The 2020-2021 Policy contains the "Important Messages" section, which states that Howell Sr. and Ms. Howell confirmed that they occupied the insured property at the time of coverage.

62.     Upon information and belief, Howell Sr. and/or Ms. Howell do not occupy the 4848 Property, and have not occupied this property for the past several years.

63.     Homesite is entitled to declaratory judgment that there is no coverage under the 2020-2021 Policy in regard to the Underlying Lawsuit, because neither Howell Sr. nor Ms.

COMPLAINT FOR DECLARATORY JUDGMENT - 15

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

Howell occupied the 4848 Property during the respective policy periods, and did not correct this information within thirty (30) days as required by the 2020-2021 Policy.

### VII.    FOURTH CAUSE OF ACTION: DECLARATORY JUDGMENT "OCCURRENCE"

64.     Homesite realleges each of the allegations contained in Paragraphs 1 through 63 as if fully set forth herein.

65.     The 2020-2021 Policy provides coverage only for certain injuries and damages caused by an "occurrence," which is specifically defined as "an accident."

66.     The Underlying Lawsuit contains allegations of intentional conduct, such as trespass and waste on the SPLT Property, as well as similar conduct of entering the SPLT Property after the cease and desist letter was issued.

67.     Homesite is entitled to declaratory judgment that there is no coverage under the Policies for any intentional conduct alleged in the Underlying Lawsuit as it would not fall under the definition of the term "occurrence" as defined by the 2020-2021 Policy.

### VIII.    FIFTH CAUSE OF ACTION: DECLARATORY JUDGMENT DAMAGES BECAUSE OF "PROPERTY DAMAGE"

68.     Homesite realleges each of the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

69.     The 2020-2021 Policy provides coverage for damages because of "bodily injury" or "property damage."

70.     The Underlying Lawsuit contains claims for injunctive and declaratory relief. Such claims are not for damages, and would not fall under the coverage provided by the Policies.

71.     Homesite is entitled to declaratory judgment that there is no coverage under the 2020-2021 Policy for any injunctive and declaratory relief sought in the Underlying Lawsuit.

COMPLAINT FOR DECLARATORY JUDGMENT - 16

## IX.   SIXTH CAUSE OF ACTION: DECLARATORY JUDGMENT EXPECTED OR INTENDED INJURY EXCLUSION

72.     Homesite realleges each of the allegations contained in Paragraphs 1 through 71 as if set forth fully herein.

73.     The Policies preclude personal liability coverage for "property damage" that is expected or intended by the "insured."

74.     The allegations in the Underlying Lawsuit indicate that any "property damage" to the SPLT Property was intentional, *i.e.*, it was expected or intended, especially after the cease and desist letter.

75.     While Homesite maintains that Howell Jr. was not an "insured" under the 2020-2021 Policy, but in the event that it is determined that Howell Jr. qualifies as an "insured," Homesite is entitled to declaratory judgment that there is no coverage under the 2020-2021 Policy because any "property damage" alleged in the Underlying Lawsuit was expected or intended by Howell Jr.

## X.   SEVENTH CAUSE OF ACTION: DECLARATORY JUDGMENT OWNED PROPERTY EXCLUSION

76.     Homesite realleges each of the allegations contained in Paragraphs 1 through 75 as if set forth fully herein.

77.     The 2020-2021 Policy exclude personal liability coverage for "property damage" arising out of a premises owned by an insured that is not an insured location.

78.     Under information and belief, some of the alleged "property damage" in this matter was to an "insured's" own property, or to property rented to an "insured," occupied by an "insured," used by an "insured," or in an "insured's" care.

79.     Homesite is entitled to declaratory judgment that there is no coverage under the 2020-2021 Policy for any "property damage" alleged in the Underlying Lawsuit to an "insured's"

COMPLAINT FOR DECLARATORY JUDGMENT - 17

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

own property, or to property rented to an "insured," occupied by an "insured," used by an "insured," or in an "insured's" care.

## XI.   EIGHTH CAUSE OF ACTION: DECLARATORY JUDGMENT BUSINESS ACTIVITIES EXCLUSION

80.     Homesite realleges each of the allegations contained in Paragraphs 1 through 79 as if set forth fully herein.

81.     The 2020-2021 Policy excludes coverage for "property damage" arising out of or in connection with a "business" engaged in by an "insured."

82.     The alleged presence of a small hydroelectric plant and allegation that water from the Water Pipelines is not used for domestic water suggests that the allegations in the Underlying Lawsuit arise out of "business" activities.

83.     Homesite is entitled to declaratory judgment that there is no coverage under the 2020-2021 Policy for any "property damage" alleged in the Underlying Lawsuit that arose out of or in connection with a "business" engaged in by an "insured."

## XII.   NINTH CAUSE OF ACTION: DECLARATORY JUDGMENT MOTOR VEHICLES EXCLUSION

84.     Homesite realleges each of the allegations contained in Paragraphs 1 through 83 as if set forth fully herein.

85.     The 2020-2021 Policy excludes coverage for "property damage" arising out of the use of motor vehicles.

86.     The Underlying Lawsuit alleges that Howell Jr. used "motor vehicles and heavy equipment on and throughout the [SPLT] Property."

87.     Homesite is entitled to declaratory judgment that there is no coverage under the 2020-2021 Policy for any "property damage" arising out of the use of motor vehicles.

COMPLAINT FOR DECLARATORY JUDGMENT - 18

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## XIII.   TENTH CAUSE OF ACTION: DECLARATORY JUDGMENT PUNITIVE AND NON-MONETARY DAMAGES

88.     Homesite realleges each of the allegations contained in Paragraphs 1 through 87 as if set forth fully herein.

89.     The 2020-2021 Policy provides coverage only for damages caused by "property damage" and not for enhanced damages awarded for exemplary or punitive reasons.

90.     The Underlying Lawsuit seeks punitive damages (*i.e.*, treble damages).

91.     Homesite is entitled to declaratory judgment that there is no coverage under the 2020-2021 Policy for any punitive damages sought in the Underlying Lawsuit.

## XIV.   ELEVENTH CAUSE OF ACTION: DECLARATORY JUDGMENT CONCEALMENT OR FRAUD

92.     Homesite realleges each of the allegations contained in Paragraphs 1 through 91 as if set forth fully herein.

93.     There is no coverage under the 2020-2021 Policy for one or more "insureds" who, whether before or after a loss, have intentionally concealed or misrepresented any material fact or circumstance; or engaged in fraudulent conduct, relating to this insurance.

94.     Upon information and belief, Howell Sr., Ms. Howell, and/or Howell Jr. concealed material information from Homesite and took fraudulent action to subsequently alter coverage under the Policies after the Underlying Lawsuit was filed.

95.     This conduct included concealment and/or fraudulent conduct regarding:

    a.   who occupied the "insured location" and when

    b.   the actual property being insured, whether it was the 4848 Property or the 4890 Property; and

    c.   Lack of notification to Homesite of the pending Underlying Lawsuit in June 2021 when amendments to the 2021-2022 Policy were made.

COMPLAINT FOR DECLARATORY JUDGMENT - 19

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

96.     Homesite's rights under the Policies were prejudiced as a result of the concealment and fraudulent actions.

97.     Homesite is entitled to declaratory judgment that there is no coverage under the Policies for the allegations in the Underlying Lawsuit under the concealment and fraud condition to coverage in the Policies.

## XV.     TWELFTH CAUSE OF ACTION: DECLARATORY JUDGMENT LATE TENDER

98.     Homesite realleges each of the allegations contained in Paragraphs 1 through 97 as if set forth fully herein.

99.     The 2020-2021 Policy requires that the insured take certain actions to provide timely notice to Homesite of a claim or potential claim.

100.     Specifically, the 2020-2021 Policy requires that the insured provide written notice to Homesite or its agent as soon as is practical for an accident or occurrence.

101.     The 2020-2021 Policy provides that the insured must promptly forward every notice, demand, summons or other process relating to the accident or occurrence.  This would include the Underlying Lawsuit.

102.     The Underlying Lawsuit was filed on or about December 3, 2020, and upon information and belief, Howell Jr. was served in January or February 2021.

103.     Homesite did not receive notice of the Underlying Lawsuit until early July 2021, approximately six (6) months after Howell Jr. was served, and after Homesite was asked to amend the insured property on the 2021-2022 Policy.

104.     Homesite's coverage defenses and its ability to defend the Underlying Lawsuit were substantially prejudiced by the late notice.

COMPLAINT FOR DECLARATORY JUDGMENT - 20

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

105.    The timing of the late notice—only after the 2021-2022 Policy had been amended regarding the insured property—suggests that the delayed tender of the Underlying Lawsuit was intentionally committed until after this change was made.

106.    Homesite is entitled to declaratory judgment that there is no coverage under the Policies in regard to the Underlying Lawsuit because Homesite was prejudiced by late notice, which was possibly intentional.

107.    A justiciable controversy exists between Homesite and the Howells and Howell Jr. with regard to defense and indemnity coverage to Howell Jr. under the Policies.

### XVI.   PRAYER FOR RELIEF

Homesite prays for the following relief:

1.    Declaratory judgment that it owes no duty to defend and/or indemnify Howell Jr. from the claims alleged in the Underlying Lawsuit under one or more of the Counts alleged herein;

2.    For attorneys' fees and costs allowed by statute and/or applicable law; and

3.    Such other and further relief as the Court deems just and equitable.

DATED this 12th day of October, 2021.

*s/ Eliot M. Harris*
Eliot M. Harris, WSBA # 36590
*s/ Miles J. M. Stewart*
Miles J. M. Stewart, WSBA # 46067
**WILLIAMS, KASTNER & GIBBS PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Tel:    (206) 628-6600
Fax:    (206) 628-6611
Email: eharris@williamskastner.com
          mstewart@williamskastner.com

*Attorneys for Plaintiff*
*Homesite Insurance Company of the Midwest*

COMPLAINT FOR DECLARATORY JUDGMENT - 21

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600

7462085.2

# EXHIBIT A

FILED
COUNTY CLERK

2020 DEC -3 PM 1:16

WHATCOM COUNTY
WASHINGTON

BY_____

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF WHATCOM

SIERRA PACIFIC LAND & TIMBER COMPANY, a
California corporation,

                    Plaintiff,

v.

ROBERT HOWELL, JR., a single individual,

                    Defendant

No. 20 2 01247 37

COMPLAINT TO QUIET TITLE

ROBERT E. OLSON

Plaintiff SIERRA PACIFIC LAND & TIMBER COMPANY, for complaint against Defendant Robert Howell, Jr., alleges as follows:

## I.    IDENTIFICATION OF PARTIES

1.1    Plaintiff Sierra Pacific Land & Timber Company ("Plaintiff" or "SPL&T") is a California corporation. It owns in fee simple the parcels of real estate assigned Whatcom County tax parcel numbers 390535 452285 0000, 390536 148457 0000, 390536 288303 0000, 380502 466412 0000, 380501 191461 000, which are legally described at **Exhibit A** hereto, and are fully incorporated herein ("SPL&T Property").

1.2    Defendant Robert Howell, Jr., a single individual, ("Defendant") is the owner in fee simple of the real estate located at 4890 Mosquito Lake Road, Deming, Washington

COMPLAINT TO QUIET TITLE - Page 1

CARMICHAEL CLARK, P.S.
ATTORNEYS AT LAW
P.O. Box 5226
Bellingham, WA 98227
P. 360 647 1500 • F. 360 647 1501

1    98244, which is legally described as:

2    THAT PORTION OF GOVERNMENT LOT 1, SECTION 2, TOWNSHIP 38 NORTH,
     RANGE 5 EAST OF W.M., LYING EASTERLY OF MOSQUITO LAKE ROAD.
3    SITUATE IN WHATCOM COUNTY, WASHINGTON.

4    (Hereafter, "Howell Property.")

5                    II.       JURISDICTION AND VENUE

6    2.1   This Court has jurisdiction and venue is properly laid with this Court because this

7          action involves quieting title to and trespass upon certain real property located in

8          Whatcom County, Washington.

9                    III.      STATEMENT OF FACTS

10   3.1   The SPL&T Property and the Howell Property are neighboring properties in and

11         around Deming, Washington. Situated between these properties are six other parcels

12         owned by third parties.

13   3.2   Robert Howell, Jr. is the son of Robert Howell, Sr. and Robin Howell.

14   3.3   Robert Howell, Sr. and Robin Howell purchased the Howell Property in 1976. Pursuant

15         to a divorce decree, Robin Howell acquired the Howell Property from Robert Howell,

16         Sr. in 2014. In 2018, Robert Howell, Jr. acquired the Howell Property from his mother

17         by Quit Claim Deed. Attached as **Exhibit B** is a copy of that Quit Claim Deed, which is

18         fully incorporated herein.

19   3.4   Members of the Howell family also own the property immediately to the west of the

20         Howell Property, but as described below that property is not relevant to this action.

21   3.5   The Howell Property has a small hydroelectric plant serving the property. The Howell

22         property draws water from natural streams on the SPL&T Property through a series of

23   COMPLAINT TO QUIET TITLE - Page 2

1        water intakes and water pipelines to serve the hydroelectric plant.

2   3.6   SPL&T's predecessor Georgia-Pacific Corporation granted a non-exclusive easement in

3        gross ("the Easement") to Robert Howell, Sr. and Robin Howell in 1978. The Easement

4        is attached as **Exhibit C** hereto and is fully incorporated herein. The Easement permits

5        only constructing, repairing, maintaining, servicing and operating a water pipeline

6        over an area 10 feet wide by 450 feet long on the SPL&T Property. On information

7        and belief, the water pipeline actually constructed pursuant to the Easement may be

8        on the SPL&T Property outside the easement area.

9   3.7   In addition to the water pipeline associated with the Easement, SPL&T and its

10       predecessors allowed Robert Howell, Sr. to lay water intakes and water pipeline in

11       other locations outside the Easement area on the SPL&T Property so long as the

12       pipeline and constructing, repairing, maintaining, servicing, and operating the same

13       did not interfere their forest practice operations. On information and belief, Robert

14       Howell, Sr. laid several thousands of feet of water pipeline on the SPL&T Property

15       outside the Easement area. (Collectively the water intakes and water pipelines

16       described in paragraphs 3.5-3.7 are referred to as the "Water Pipelines.")

17   3.8   A map at **Exhibit D** hereto depicts the properties, the approximate location of the

18       Easement, and the approximate location of the Water Pipelines.

19   3.9   Upon information and belief, the Water Pipelines are used to provide water to the

20       Howell Property for use at its small hydroelectric plant, and these Water Pipelines are

21       not used to provide domestic water to the Howell Property or to other property

22       owned by members of the Howell family immediately west of the Howell Property.

23   COMPLAINT TO QUIET TITLE - Page 3

CARMICHAEL CLARK, P.S.
ATTORNEYS AT LAW
P.O. Box 5226
Bellingham, WA 98227
P. 360 647 1500 • F. 360 647 1501

1    3.10    The Easement terminates automatically if the grantee fails to use it for any

2            continuous period of twenty-four (24) months. In early November 2015, Robert

3            Howell Sr. informed John Gold of SPL&T that he abandoned the Easement and

4            attendant Water Pipelines and that SPL&T was free to do what it wanted with the

5            entire system.  The Water Pipelines were out of operation at the time of this

6            communication and had been for some time prior.  Upon information and belief, the

7            Easement and all Water Pipelines remained abandoned for twenty-four (24) months;

8            hence, the Easement automatically terminated in 2016 or 2017.

9    3.11    In addition, because the Easement was granted in gross to Robert Howell Sr. and

10           Robin Howell, Robert Howell Jr. does not have rights under it.  SPL&T is not aware of

11           any instrument conveying the rights contained in the Easement to Robert Howell, Jr.

12           Moreover, SPL&T did not give permission to Robert Howell, Jr. to work on or utilize

13           the Water Pipelines on the SPL&T Property outside the Easement area.

14   3.12    In 2018 or thereafter, after he acquired title to the Howell Property, Defendant

15           Robert Howell, Jr. began using and maintaining the Water Pipelines.  Sometime on or

16           before August 27, 2020 through August 31, 2020, Defendant performed construction

17           work on a water pipeline on private Logging Road 5104. This work, and other nearby

18           work, included digging, damage to an active logging road, and leaving open a trench

19           adjacent to the logging road. Upon information and belief, Defendant did not acquire

20           any permits to conduct this work.

21   3.13    Logging Road 5104 is an active logging road. The work performed by Defendant

22           created a hazard to people and property, including damaging the land itself.

23   COMPLAINT TO QUIET TITLE - Page 4



1   3.14   Defendant also stockpiled unused pipe near private Logging Road 5100 in at least two

2        locations near mileposts 2.0 and 3.0, and deposited construction debris and garbage

3        at multiple locations in proximity to the Water Pipelines.

4   3.15   Defendant used motor vehicles and heavy equipment on and throughout the SPL&T

5        Property.

6   3.16   On September 16, 2020, SPL&T sent Defendant a cease and desist letter describing

7        the trespass and demanding Defendant cease and desist the trespass and remove all

8        materials, equipment and belongings from the area of trespass by September 23,

9        2020. A copy of that letter is attached as **Exhibit E** hereto and is fully incorporated

10       herein.

11   3.17   Defendant was in communication with SPL&T through counsel to address the issues

12       raised in the cease and desist letter, though no resolution was reached and the

13       trespass has continued.

14   3.18   SPL&T now brings this action to quiet title, eject Defendant, his property, and the

15       Water Pipelines from the SPL&T Property, and recover damages, including treble

16       damages, costs and attorney fees.

17             **IV.    FIRST CAUSE OF ACTION – QUIET TITLE**

18   4.1    SPL&T realleges paragraphs 1.1 through 3.18.

19   4.2    SPL&T is the owner in fee simple of the SPL&T Property, and has maintained such

20       ownership. SPL&T is in actual occupancy and possession of the SPL&T Property.

21   4.3    SPL&T requests that title to the SPL&T Property be quieted in it, along with ownership

22       of the abandoned Water Pipelines, specifically against any and all claims of Robert

23   COMPLAINT TO QUIET TITLE - Page 5

1    Howell, Jr.

2                    **V.      SECOND CAUSE OF ACTION – EJECTMENT**

3    5.1.   SPL&T realleges paragraphs 1.1 through 3.18.

4    5.2.   SPL&T is the owner in fee simple of the SPL&T Property, and has maintained such

5           ownership. SPL&T is in actual occupancy and possession of the SPL&T Property.

6    5.3.   Defendant is disrupting SPL&Ts possession of the property through the Water

7           Pipelines on the SPL&T Property and his work thereon in logging roads.

8    5.4.   SPL&T requests that full possession to the SPL&T Property be restored to SPL&T and

9           that Defendant, his property, and the Water Pipelines be ejected from the SPL&T

10          Property.

11                   **VI.      THIRD CAUSE OF ACTION – TRESPASS**

12   6.1.   SPL&T realleges paragraphs 1.1 through 3.18.

13   6.2.   SPL&T is the owner in fee simple of the SPL&T Property.

14   6.3.   Defendant has entered or remained upon, or caused a thing to enter or remain upon,

15          the SPL&T Property without permission or invitation, through his person and property

16          including the Water Pipelines.

17   6.4.   This trespass is continuing in nature.

18   6.5.   SPL&T requests that Defendant be ordered to cease the trespass.

19   6.6.   As a consequence of Defendant's trespass, Plaintiff has been damaged in an amount

20          to be proven at trial, including the costs to remove the Water Pipelines.

21                   **VII.      FOURTH CAUSE OF ACTION – WASTE**

22   8.1.   SPL&T realleges paragraphs 1.1 through 3.18.

23   COMPLAINT TO QUIET TITLE - Page 6

1    8.2.    SPL&T is the owner in fee simple of the SPL&T Property and all improvements upon

2           the same including water lines and roads.

3    8.3.    Defendant removed valuable property from the land, wrongfully caused waste or

4           injury to the land, and/or wrongfully injured the improvements on the land.

5    8.4.    As a consequence of Defendant's waste and injury to the land, Plaintiff has been

6           damaged in an amount to be proven at trial.  Plaintiff is entitled to all damages

7           permitted under RCW 4.24.630 including treble damages and reimbursing Plaintiff for

8           their reasonable costs, including, but not limited to, investigative costs, reasonable

9           attorney fees, and other litigation related costs in bringing this action.

10                    **VIII.    FIFTH CAUSE OF ACTION – NUISANCE**

11    9.1.    SPL&T realleges paragraphs 1.1 through 3.18.

12    9.2.    Defendant unlawfully performed construction work on the Water Pipelines, which

13           annoyed, injured, or endangered the comfort, repose, health, or safety of others

14           and/or rendered others insecure in life or in the use property.

15    9.3.    SPL&T requests that Defendant be ordered to cease the nuisance.

16    9.4.    As a consequence of Defendant's nuisance and injury to the land, Plaintiff has been

17           damaged in an amount to be proven at trial, including the costs to remove the Water

18           Pipelines and restore and fix roads damaged.

19                    **IX.    SIXTH CAUSE OF ACTION – NEGLIGENCE**

20    10.1.    SPL&T realleges paragraphs 1.1 through 3.18.

21    10.2.    Defendant had a duty to act with reasonable care while on the SPL&T Property and

22           while constructing, repairing, maintaining, servicing and operating the Water

23    COMPLAINT TO QUIET TITLE - Page 7

1         Pipelines or any water pipeline on the land.

2   10.3.   Defendant breached this duty proximately causing damage to Plaintiff in an amount

3         to be proven at trial.

4              **X.**     **PRAYER FOR RELIEF**

5   WHEREFORE, SPL&T requests the following relief:

6   11.1.   That SPL&T's right, title, and interest in the SPL&T Property be established and

7         quieted in SPL&T in fee simple. SPL&T seeks quieting of title against any and all claims

8         by all persons, including but not limited to the Robert Howell, Jr.

9   11.2.   That Defendant and the Water Pipelines and all appurtenances thereto be ejected

10         from the SPL&T Property.

11   11.3.   That Defendant be enjoined and restrained from entering the SPL&T Property.

12   11.4.   That Defendant be enjoined and restrained from constructing, repairing, maintaining,

13         servicing and operating the Water Pipelines and any water pipeline on the SPL&T

14         Property.

15   11.5.   That SPL&T be awarded damages, including treble damages, and their reasonable

16         costs and attorney fees.

17   11.6.   For any such further relief as the Court may deem just and reasonable.

18   DATED this 3rd day of December, 2020.

19                   CARMICHAEL CLARK, P.S.

20

21                   ROBERT A. CARMICHAEL, WSBA No. 14008
                    LISA M. KEELER, WSBA No. 39463
                    CATHERINE MOORE, WSBA No. 51197

22                   Attorneys for Sierra Pacific Industries

23   COMPLAINT TO QUIET TITLE - Page 8

**Exhibit A**

Legal description of SPL&T Property

**390535 452285 0000**
PARCEL 111
THE EAST HALF OF THE EAST HALF OF SECTION 35, TOWNSHIP 39 NORTH, RANGE 5 EAST OF
W.M., SITUATE IN WHATCOM COUNTY, WASHINGTON.

**390536 148457 0000**
PARCEL 113
GOVERNMENT LOT 1 AND THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF
SECTION 36, TOWNSHIP 39 NORTH, RANGE 5 EAST OF W.M., SITUATE IN WHATCOM COUNTY,
WASHINGTON.

**390536 288303 0000**
PARCEL 112
GOVERNMENT LOTS 2, 3, AND 4; THE EAST HALF; THE SOUTHEAST QUARTER OF THE
NORTHWEST QUARTER; AND THE EAST HALF OF THE SOUTHWEST QUARTER, SECTION 36,
TOWNSHIP 39 NORTH, RANGE 5 EAST, W.M., SITUATE IN WHATCOM COUNTY, WASHINGTON.

**380502 466412 0000**
PARCEL 68
GOVERNMENT LOTS 13 AND 14, SECTION 2, TOWNSHIP 38 NORTH, RANGE 5 EAST OF W.M.,
SITUATE IN WHATCOM COUNTY, WASHINGTON.

**380501 191461 0000**
PARCEL 67
GOVERNMENT LOTS 1, 2, 3, AND 4; THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER;
THE SOUTH HALF OF THE NORTHWEST QUARTER; AND THE NORTHEAST QUARTER OF THE
SOUTHEAST QUARTER; ALSO, THE SOUTH HALF OF THE SOUTHWEST QUARTER; THE
NORTHEAST QUARTER OF THE SOUTHWEST QUARTER; THE NORTHWEST QUARTER OF THE
SOUTHWEST QUARTER; THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER; THE WEST
HALF OF THE SOUTHEAST QUARTER; AND THE SOUTHEAST QUARTER OF THE SOUTHEAST
QUARTER, ALL IN SECTION 1, TOWNSHIP 38 NORTH, RANGE 5 EAST OF W.M., SITUATE IN
WHATCOM COUNTY, WASHINGTON.

**Exhibit B**

Quit Claim Deed

Whatcom County, WA
Total:$75.00   Pgs=2
DEED
Request of:   BRITAIN/KRELL PLLC

**2018-0200045**
02/01/2018 11:44 AM



0011248120180200045020021

When recorded return to:

Robert J. Howell, Jr.
4890 Mosquito Lake Road
Deming, WA 98244

# QUIT CLAIM DEED

**Document Title:** Quit Claim Deed
**Reference Nos. of Documents Affected:** N/A
**Grantor:** Robin R. Howell, as her separate estate
**Grantee:** Robert J. Howell, Jr., a single person
**Assessor Parcel ID No.:** 380502 241494 0000 / PID# 84185
**Legal Description:** Ptn Gov't Lot 1, Section 2, Township 38 North, Range 5 East, W.M. Situate in Whatcom County Washington.

THE GRANTOR, **Robin R. Howell, as her separate estate**, for and in consideration of **Gift with No Consideration, WAC 458-61A-201 (1)**, in hand paid, conveys and quit claims to THE GRANTEE, **Robert J. Howell, Jr., a single person**, the following described real estate, situated in the County of **Whatcom**, State of **Washington** together with all after acquired title of the grantor(s) herein:

> That portion of Government Lot 1, Section 2, Township 38 North, Range 5 East W.M., lying easterly of the Mosquito Lake Road.
>
> Except road.
>
> Situate in Whatcom County, State of Washington.

**Tax Parcel No.:** 380502 241494 0000 / PID# 84185

Page 1 of 2

2677139 218744 *2/1/2018 10.00*

Date: January 29th, 2018

Robin R. Howell

STATE OF WASHINGTON

                                    SS

COUNTY OF WHATCOM

I certify that I know or have satisfactory evidence that Robin R. Howell is the person who appeared before me, and said person acknowledged that she signed this instrument and acknowledged it to be her free and voluntary act for the uses and purposes mentioned in this instrument.

Dated: Jan. 29, 2018

Notary name printed or typed: Timothy G. Krell
Notary Public in and for the State of Washington
Residing at Bellingham
My appointment expires: 9/28/2018

TIMOTHY G. KRELL
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
09-28-18

Page 2 of 2

**Exhibit C**

Easement

SH -223

HOWELL, ROBERT & ROBIN -
BASEMENT, WHATCOM COUNTY,
2/27/78

## EASEMENT

The Grantor, GEORGIA-PACIFIC CORPORATION, a Georgia corporation, having a place of business in Bellingham, Whatcom County, Washington, for and in consideration of the sum of One Dollar ($1.00) and other valuable consideration, to it in hand paid, grants and conveys to the Grantee, Robert Howell and Robin Howell, his wife, of P. O. Box 592, Deming, Washington, 98244, its successors and assigns, a non-exclusive easement over, upon and across a strip of land 10 feet in width, 5 feet on each side of the following described centerline, situated in Whatcom County, Washington and described as follows:

> . Beginning at a point on an unnamed stream in the NE¼NE¼, Section 2, Township 38 North, Range 5 East, W.M., said point being 615 feet South and 450 feet East of the Northwest corner of the NE¼NE¼ of said Section 2; thence West a distance of approximately 450 feet to a point on the West boundary of said NE¼NE¼ of Section 2, as measured along said West boundary, which point is the point of ending the description.

The rights granted hereinabove shall be subject to the following terms and conditions:

1. This Easement is conveyed for the sole purpose of constructing, repairing, maintaining, servicing and operating a water pipeline.

2. Grantor may, at any time, and without cause, terminate this Easement upon sixty (60) days' written notice to Grantee of said termination. In addition, should Grantee fail to use this Easement, for the purposes herein mentioned, for any continuous period of twenty-four (24) months, said Easement and all rights and privileges granted herein shall automatically terminate without further action by either party hereto.

3. Grantee accepts full responsibility for compliance with all applicable laws and regulations governing all activities arising out of or in any manner connected with the operations hereunder. Grantee agrees to hold Grantor harmless from any liability, cost or expense, and to preserve the property clear of any liens or assessments as a result of any claim which may be made by reason of failure to so comply with any applicable laws and regulations.

1145⁷-D

INDEXED
Land Journal
Document File
Tickler File
Tax Records

~54-223

4. This easement shall not be construed as a warranty of the Grantor's interest in the real property described above, nor as a warranty of quiet possession, the burden of locating property boundaries and identifying any conflicting claimants to the real property herein being assumed by Grantee.  Rights granted herein shall be subject to any interest previously made by Grantor.

5. Grantee shall pay all increases in taxes and assessments on said property and its improvements, which might become a lien against said property, due to Grantee's construction or activities hereunder.  Said taxes shall be paid by Grantee on or before their due dates.

6. If, by virtue of any laws, ordinances, rules, regulations, or orders of any governmental unit, department or agency thereof, Grantor is required due to the granting of this easement, to restrict his activities or expend additional funds to carry on such activities upon the above land or Grantor's adjacent lands, Grantee shall pay to Grantor such additional consideration for this easement as Grantor shall determine, in its sole judgment and discretion, will adequately compensate Grantor for all economic losses sustained as a result of such restrictions or additional costs, or in the alternative, Grantee may cancel its easement and all the rights associated therewith.

7. Grantee agrees to hold harmless Grantor, its agents and employees, against all claims and liabilities which may be asserted by Grantee, his agents, employees, licensees and the like, resulting from any activities of Grantor on the herein described land or on nearby lands, and from the activities of any other on Grantor's land, including without limitation those arising from any alleged changes in the quantity or quality of water.

8. Grantor shall not be responsible for any damage to the waterline inflicted by Grantor in the normal course of its operations unless such damages is the result of gross negligence or malicious intent of the Grantor.

9. The Grantor reserves the right to cross and re-cross the said pipeline easement at any time and at any location.

- 2 -

SH-223

10.   Grantee agrees to protect, save, and hold harmless, Grantor from all claims, costs, damages or expenses of any kind resulting from the exercise of the rights granted herein.  If, for any reason, it becomes necessary for the Grantor to employ an attorney or in case Grantor shall bring suit for breach of any provision of this Easement, or to recover possession of the premises, or if Grantee shall bring any action for any relief against Grantor, declaratory or otherwise arising out of this Easement and Grantor shall prevail on such action, then in any of such events, Grantee shall pay Grantor a resonable attorney's fee and all cost or expenses expended or incurred by the Grantor in connection with such default or action.

11.   The easement and rights herein granted shall be interpreted and construed as covenants running with the land, and shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto.

IN WITNESS WHEREOF, the Grantor and Grantee have caused this easement to be executed this 27ᵗʰ day of _February_ , 1978.

GEORGIA-PACIFIC CORPORATION

_____
Robert Howell

Vice-President

_____
Robin Howell

Assistant Secretary

STATE OF WASHINGTON      )
                         )  ss.
County of Whatcom        )

     On this 27th day of February, 1978, before me,
the undersigned, a Notary Public in and for the State of
Washington, duly commissioned and sworn, personally appeared
J.H. Dunkak and J. Richard Duggan, to me known to be the Vice
President and Assistant Secretary, respectively of GEORGIA-
PACIFIC CORPORATION, the corporation that executed the fore-
going instrument, and acknowledged the said instrument to be
the free and voluntary act and deed of said corporation, for
the uses and purposes therein mentioned, and on oath stated
that they authorized the execution of said instrument and that
the seal affixed is the corporate seal of said corporation.

     WITNESS my hand and official seal hereto affixed
the day and year first above written.

                        Notary Public in and for the
                        State of Washington, residing at
                        Bellingham

5H-223

**Exhibit D**

Map of Howell Property, SPL&T Property, Easement, and Water Pipelines



**Exhibit E**

Cease and Desist letter

 # SIERRA PACIFIC INDUSTRIES

P.O. Box 496028 · Redding, CA 96049-6028 · (530) 378-8000 · Fax (530) 378-8109

September 16, 2020

**VIA CERTIFIED MAIL**
Mr. Robert J. Howell Jr.
4890 Mosquito Lake Road
Deming, WA 98244

**AND U.S. MAIL**
Mr. Robert J. Howell Jr.
P.O. BOX 852
Deming, WA 98244-0852

**RE:   NOTICE OF TRESPASS ONTO SIERRA PACIFIC LAND; CEASE AND DESIST**

Mr. Howell and other Involved Parties:

The purpose of this letter is to notify you of your current and ongoing trespass on to land owned by Sierra Pacific Industries (SPI) at the following locations in Whatcom, County, Washington:

1. Fresh excavation of our private forest road, known as the 5104 Road, installation of a new waterline, and incomplete backfilling of the trench, generally in the southwest ¼ of Section 36, Township 39 North, Range 5 East, W.M.;
2. Recent stockpiling of unused pipe near our private forest road, known as the 5100 Road, in at least two locations, including near mileposts 2.0 and 3.0, both in the northeast ¼ of said Section 36;
3. Development of surface water intakes at multiple locations in unnamed tributaries to the Middle Fork Nooksack River, and installation and use of both above-ground and buried pipelines conveying the withdrawn water, including approximately the northeast ¼ , northwest ¼ , and southwest ¼ of said Section 36, the southeast ¼ of the southeast ¼ of Section 35, Township 39 North, Range 5 East, the northwest ¼ of the northwest ¼ of Section 1, Township 38 North, Range 5 East, and the northeast ¼ of the northeast ¼ of Section 2, Township 38 North, Range 5 East, W.M. ;
4. Depositing of construction debris and garbage at multiple locations in proximity to the water intakes and pipelines described above;
5. Use of motor vehicles and heavy equipment on our private forest roads throughout the area described above.

A map of the area of trespass and photos of this area are enclosed for your reference.

Through this letter, you are hereby notified that you must immediately **CEASE AND DESIST** this trespass, and remove all materials, equipment and belongings from the area of trespass.

Page 2

In the event you fail to **CEASE AND DESIST** this trespass, and remove all materials, equipment and belongings from the area of trespass by **September 23, 2020**, SPI will take immediate steps to remedy this situation, including, but not limited to, removing and disposing of all materials, equipment, and belongings from the area noted above, notifying local authorities of this trespass, and taking all other necessary legal actions to prevent the trespass.   Such legal actions may include, but are not limited to, seeking a restraining order against you.

If you have any questions about this matter, please contact Mr. John Gold, District Manager, Sierra Pacific Industries, at (360) 708-8055.  In the event your legal counsel wishes to discuss this matter, they may contact me at (530) 378-8000.

Sincerely,

James M. Lynch
General Counsel
Sierra Pacific Industries

Cc:     Mr. John Gold, Sierra Pacific Industries

Enclosures

# EXHIBIT B

## CERTIFICATE OF AUTHENTICITY

**I, Anthony Williams, an Underwriter for Homesite Insurance Company of the Midwest, hereby certify that this policy of insurance is a true and correct copy of our policy # 31835622, issued by Homesite Insurance Company of the Midwest To:**

**Robin Howell**
**Robert Howell**
**4848 Mosquito Lake RD**
**Deming, WA  98244-9303**

**Which was EFFECTIVE:**

12:01 AM February 25, 2020 through
12:01 AM February 25, 2021 (local time)

**Signed, this 23rd day of July 2021**

Anthony Williams
**Underwriter**

# Progressive Home Advantage

Underwritten by HOMESITE INSURANCE COMPANY OF
THE MIDWEST
P.O. Box 5300
Binghamton, NY 13902-9953
Tel. (866) 960-8609 Fax (877) 273-2984

Robin Howell
Robert Howell
205 LINCOLN ST
UNIT B
EVERSON, WA   98247-8251

### Renewal Declarations
### For Policy Number 31835622

**Policy Period** This policy covers the listed location(s)
**From** 12:01 AM February 25, 2020
**Through** 12:01 AM February 25, 2021 (local time)

*Tier 016*

*Issued by Homesite Insurance Company of the Midwest*

**Insured Location**
4848 MOSQUITO LAKE RD  DEMING WA 98244-9303

**Description of Dwelling**
1982 Logs, Single family home, Primary residence, 1000ft. or less from hydrant, within 5 miles from fire station

**Deductible – Other Covered Perils $500**
**Wind/Hail Deductible $500**

In case of loss under Section I, we cover only that part of the loss over the deductible stated.

| Coverage | Limit | Premium |
|---|---|---|
| **Section I - Property** | | |
| Coverage A - Dwelling | $163,000 | $1,022.00 |
| Coverage B - Other Structures | $16,300 | Included |
| Coverage C - Personal Property | $114,100 | Included |
| Coverage D - Loss of Use | $32,600 | Included |
| **Section II - Liability** | | |
| Coverage E - Personal Liability | $500,000 | $61.00 |
| Coverage F - Medical Payments to Others | $5,000 | $18.00 |
| **Additional Coverages** | | $225.00 |
| See **Additional Coverages** on reverse side for details | | |
| **Surcharges** | | $58.00 |
| See **Surcharges** on reverse side for details | | |
| **Discounts** | | -$237.00 |
| See **Discounts** on reverse side for details | | |
| **Total** | | $1,147.00 |

**Authorized Representative**

Policy Number 31835622   AHD102-1003

## Additional Coverages                                    $225.00

| | | Limit | Premium |
|---|---|---|---|
| HO 04 20 0694 | Specified Additional Amount Insurance for Cov A | 25% | $32.00 |
| HO 04 90 0491 | Personal Property Replacement Cost | | $142.00 |
| HO 46 18 0900 | Personal Injury - Washington | | $26.00 |
| HO 46 45 1207 | Identity Fraud Expense Coverage - Washington | | $25.00 |

## Surcharges                                              $58.00

| | | Limit | Premium |
|---|---|---|---|
| HD-016 1101 | Age of Home | | $52.00 |
| HD-071 1101 | Age of Roof | | $6.00 |

## Discounts                                               -$237.00

| | | Limit | Premium |
|---|---|---|---|
| HD-021 1298 | Mature Insured Discount | | -$109.00 |
| HD-063 1101 | Drive Home Discount | | -$128.00 |

## Contracts and Amendments

| | |
|---|---|
| **HO 00 03 0896** | **Homeowners 3 Special Form** |
| HH 01 46 0615 | Special Provisions - Washington |
| HH 80 06 0802 | Windstorm or Hail Fixed-Dollar Deductible |
| HO 04 96 0491 | No Section II Coverage - Home Day Care Business |
| HO 04 98 0491 | Refrigerated Property Coverage |

## Important Messages

**Member companies of the Homesite Insurance Group include the following: Homesite Insurance Company, Homesite Indemnity Company, Homesite Insurance Company of California, Homesite Insurance Company of Florida, Homesite Insurance Company of Illinois, Homesite Insurance Company of the Midwest, Homesite Insurance Company of New York, Homesite Insurance Company of Georgia, and Homesite Lloyd's of Texas.**

**These Declarations are not the entire insurance policy.   All information contained in the Declarations regarding the insured, covered property, coverage limits, deductibles, and premium charges is subject to the specific terms and conditions of the policy contract.   Please read your policy contract and amendments carefully.**

**We relied on the information you provided to underwrite and issue your insurance policy.   Making sure the information we have about you is correct and up-to-date will ensure your home is adequately protected.   Please review your "Declarations" page and check the description of your dwelling, occupancy, deductibles, coverages, and contracts and amendments.   If any of this information needs to be corrected, you must advise us within 30 days of receipt.**

**You stated that:**
- **you occupy the insured property and do not rent out to more than two (2) roomers/boarders**
- **no business with more than two (2) visitors per week is conducted on the premises\*\***
- **no commercial or retail farming is conducted on the premises**
- **you do not have a dog that has ever bitten a person**

**\*\*Note: Business conducted on premise is acceptable as long as it is a day care licensed by the relevant state and local regulating authorities.   Please note that the policy does not provide coverage for the day care activities and is subject to the exclusion of Home Day Care Business (HO 04 96 0491).**

**As an Auto policyholder of one of our affinity partners, you are eligible for a discount on the base premium of your Homeowners policy.   This discount is shown in the Discounts section of our declaration pages as Drive Home Discount.   You are entitled to this discount as long as you remain with your current Auto Insurance carrier.   If at any time that policy is cancelled and you no longer have auto insurance with this affinity partner, you will no longer be eligible for this discount.**

**It is your responsibility to ensure the amount of Coverage A (Limit of Liability for this structure) is sufficient to rebuild your home.  Any coverage recommendation you may have received is based in part on an estimate of the Replacement Cost of your home.  Replacement Cost is generally defined as "the cost to replace a structure with materials of like kind and quality without deduction for depreciation".  It is a good idea to reevaluate your home's replacement cost after you have completed any remodels, upgrades or modifications to your home.  If you have made any alteration to your home, please contact us.**

**HOMEOWNERS**
**HO 00 03 08 96**
**Washington**

**HOMEOWNERS 3**
**SPECIAL FORM**

| AGREEMENT |
| --- |

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

| DEFINITIONS |
| --- |

In this policy, "you" and "your" refer to the "named **insured**" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1.   **Actual cash value** means:

   **a.**   When the damage to property is economically repairable, **actual cash value** means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

   **b.**   When the loss or damage to property creates a total loss, **actual cash value** means the market value of property in a used condition equal to that of the destroyed property, if reasonably available on the used market.

   **c.**   Otherwise, **actual cash value** means the market value of new, identical or nearly identical property less reasonable deduction for wear and tear, deterioration and obsolescence.

2.   **Bodily injury** means bodily harm, sickness or disease, except a disease which is transmitted by an **insured** through sexual contact. **Bodily injury** includes required care, loss of services and death resulting from covered bodily harm, sickness or disease.

3.   **Business** includes trade, profession or occupation.

4.   **Fully enclosed building** means:

A building with continuous walls on all sides, extending from the ground level to the roof, with doors and windows (as deemed necessary) at various locations in the walls and including a continuous roof sheltering all areas within the wall perimeter.

5.   **Insured** means you and residents of your household who are:

   **a.**   Your relatives; or

   **b.**   Other persons under the age of 21 and in the care of any person named above.

Under Section **II, insured** also means:

   **c.**   With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **5.a.** or **5.b.** above. A person or organization using or having custody of these animals or watercraft in the course of any **business** or without consent of the owner is not an **insured**;

   **d.**   With respect to any vehicle to which this policy applies:

      **(1)** Persons while engaged in your employ or that of any person included in **5.a.** or **5.b.** above; or

      **(2)** Other persons using the vehicle on an **insured location** with your consent.

6.   **Insured location** means:

   **a.**   The **residence premises**;

   **b.**   The part of other premises, other structures and grounds used by you as a residence and:

      **(1)** Which is shown in the Declarations; or

      **(2)** Which is acquired by you during the policy period for your use as a residence;

   **c.**   Any premises used by you in connection with a premises in **6.a.** or **6.b.** above;

**HO 00 03 08 96**
        Copyright, Washington Surveying and Rating Bureau,
               includes copyrighted material of
      Insurance Services Office, Inc. with its permission, 1996
           **Page 1 of 23**

   **d.**   Any part of a premises:

     **(1)** Not owned by an **insured**; and

     **(2)** Where an **insured** is temporarily residing;

   **e.**   Vacant land, other than farm land, owned by or rented to an **insured**;

   **f.** Land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured**;

   **g.**   Individual or family cemetery plots or burial vaults of an **insured**; or

   **h.**   Any part of a premises occasionally rented to an **insured** for other than **business** use.

**7.**   Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   **a.**   Bodily injury; or

   **b.**   **Property damage**.

**8.**   **Property damage** means physical injury to, destruction of, or loss of use of tangible property.

**9.**   **Replacement cost** means:

   **a.**   In case of loss or damage to buildings, **replacement cost** means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

   **b.**   In case of loss to personal property, **replacement cost** means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, **replacement cost** means the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

**10.**  **Residence employee** means:

   **a.**   An employee of an **insured** whose duties are related to the maintenance or use of the **residence premises**, including household or domestic services; or

   **b.**   One who performs similar duties elsewhere not related to the **business** of an **insured**.

**11.**  **Residence premises** means:

   **a.**   The one family dwelling, other structures, and grounds; or

   **b.**   That part of any other building;

where you reside and which is shown as the **residence premises** in the Declarations.

**Residence premises** also means a two family dwelling where you reside in at least one of the family units and which is shown as the **residence premises** in the Declarations.

---

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - DWELLING

We cover:

**1.**   The dwelling on the **residence premises** shown in the Declarations, including structures attached to the dwelling; and

**2.**   Materials and supplies located on or next to the **residence premises** used to construct, alter or repair the dwelling or other structures on the **residence premises**.

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B - OTHER STRUCTURES

We cover other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

**1.**   Used in whole or in part for **business**; or

**2.**   Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private

garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A**. Use of this coverage does not reduce the Coverage **A** limit of liability.

## COVERAGE C - PERSONAL PROPERTY

We cover personal property owned or used by an **insured** while it is anywhere in the world. At your request, we will cover personal property owned by:

1.   Others while the property is on the part of the **residence premises** occupied by an **insured**;

2.   A guest or a residence employee, while the property is in any residence occupied by an **insured**.

Our limit of liability for personal property usually located at an **insured's** residence, other than the **residence premises**, is 10% of the limit of liability for Coverage **C**, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits Of Liability**. These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1.   $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2.   $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3.   $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4.   $1000 on trailers not used with watercraft.

5.   $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6.   $2000 for loss by theft of firearms.

7.   $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, holloware, tea sets, trays and trophies made of or including silver, gold or pewter.

8.   $2500 on property, on the **residence premises**, used at any time or in any manner for any **business** purpose.

9.   $250 on property, away from the **residence premises**, used at any time or in any manner for any **business** purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits **10.** and **11.** below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

   **a.**   Accessories or antennas; or

   **b.**   Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **10.**

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

   **a.**   Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

   **b.**   Is away from the **residence premises**; and

   **c.**   Is used at any time or in any manner for any **business** purpose.

Electronic apparatus includes:

   **a.**   Accessories and antennas; or

   **b.**   Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **11.**

 Copyright, Washington Surveying and Rating Bureau, includes copyrighted material of Insurance Services Office, Inc. with its permission, 1996

**Property Not Covered**. We do not cover:

1.   Articles separately described and specifically **insured** in this or other insurance;

2.   Animals, birds or fish;

3.   Motor vehicles or all other motorized land conveyances. This includes:

    **a.**   Their equipment and accessories; or

    **b.**   Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

       **(1)** Accessories or antennas; or

       **(2)** Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this Item **3.b.**

The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances:

    **a.**   Not subject to licensing requirements which are used exclusively to service an **insured**'s residence; or

    **b.**   Which are both designed and used exclusively for assisting the handicapped and have a maximum attainable speed of 10 miles per hour;

4.   Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5.   Property of roomers, boarders and other tenants, except property of roomers and boarders related to an **insured**;

6.   Property in an apartment regularly rented or held for rental to others by an **insured**, except as provided in Additional Coverages **10.**;

7.   Property rented or held for rental to others off the **residence premises**;

8.   **Business** data, including such data stored in:

    **a.**   Books of account, drawings or other paper records; or

    **b.**   Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9.   Credit cards or fund transfer cards except as provided in Additional Coverages **6.**

**COVERAGE D - LOSS OF USE**

The limit of liability for Coverage D  is the total limit for all the coverages that follow.

1.   If a loss covered under this Section makes that part of the **residence premises** where you reside not fit to live in, we cover the **Additional Living Expense**, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2.   If a loss covered under this Section makes that part of the **residence premises** rented to others or held for rental by you not fit to live in, we cover the:

**Fair Rental Value**, meaning the fair rental value of that part of the **residence premises** rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3.   If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a Peril **Insured** Against in this policy, we cover the Additional Living Expense or Fair Rental Value loss as provided under **1.** and **2.** above for no more than two weeks.

The periods of time under **1.**, **2.**, and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

**1.   Debris Removal**

We will pay your reasonable expense for the removal of debris of covered property if a Peril **Insured** Against that applies to the damaged property causes the loss.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500, for the removal from the **residence premises** of:

    **a.**    Your tree**(s)** felled by the peril of Windstorm or Hail;

    **b.**    Your tree**(s)** felled by the peril of Weight of Ice, Snow or Sleet; or

    **c.**    A neighbor's tree**(s)** felled by a Peril **Insured** Against under Coverage C;

provided the tree**(s)** damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

**2.   Reasonable Repairs**

In the event that covered property is damaged by an applicable Peril **Insured** Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril **Insured** Against.

This coverage:

    **a.**    Does not increase the limit of liability that applies to the covered property;

    **b.**    Does not relieve you of your duties, in case of a loss to covered property, as set forth in Section I - Condition **2.b.**

**3.   Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following Perils **Insured** Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or malicious mischief or Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for **business** purposes.

This coverage is additional insurance.

**4.   Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5.   Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril **Insured** Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

**6.   Credit Card, Fund Transfer Card, Forgery And Counterfeit Money**

We will pay up to $500 for:

    **a.**    The legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured**'s name;

    **b.**    Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an **insured**'s name;

    **c.**    Loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

includes copyrighted material of
Insurance Services Office, Inc. with its permission, 1996

**d.**     Loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

**a.**     By a resident of your household;

**b.**     By a person who has been entrusted with either type of card; or

**c.**     If an **insured** has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of **business** use or dishonesty of an **insured**.

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

**a.**     We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**b.**     If a suit is brought against an **insured** for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

**c.**     We have the option to defend at our expense an **insured** or an **insured**'s bank against any suit for the enforcement of payment under the Forgery coverage.

**7.    Loss Assessment**

We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage A - Dwelling, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition **1. Policy Period,** under Sections **I** And **II** Conditions, does not apply to this coverage.

**8.    Collapse**

We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

**a.**   Perils **Insured** Against in Coverage **C** - Personal Property. These perils apply to covered buildings and personal property for loss **insured** by this additional coverage;

**b.**   Hidden decay;

**c.**   Hidden insect or vermin damage;

**d.**   Weight of contents, equipment, animals or people;

**e.**   Weight of rain which collects on a roof; or

**f.**   Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under Items **b., c., d., e.,** and **f.** unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

**9.    Glass Or Safety Glazing Material**

**a.**     We cover:

**(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

**(2)** The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.**    This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in a.**(3)** above; or

**(2)** On the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.**(2)** above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Additional Coverage **9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

**10.   Landlord's Furnishings**

We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the **residence premises** regularly rented or held for rental to others by an **insured,** for loss caused only by the following Perils **Insured** Against:

**a.**    **Fire or lightning.**

**b.**    **Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a **fully enclosed building.**

**c.**    **Explosion.**

**d.**    **Riot or civil commotion.**

**e.**    **Aircraft**, including self-propelled missiles and spacecraft.

**f. Vehicles.**

**g.**    **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations, such as slash burns.

**h.**    **Vandalism or malicious mischief.**

**i. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**j. Weight of ice, snow or sleet** which causes damage to property contained in a building.

**k.**    **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

**(1)** To the system or appliance from which the water or steam escaped;

**(2)** Caused by or resulting from freezing except as provided in the peril of Freezing below; or

**(3)** On the **residence premises** caused by accidental discharge or overflow which occurs off the **residence premises**.

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

**l. Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating

system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**m.**   **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is unoccupied, unless you have used reasonable care to:

**(1)** Maintain heat in the building; or

**(2)** Shut off the water supply and drain the system and appliances of water.

**n.**   **Sudden and accidental damage from artificially generated electrical current**

This peril does not include loss to a tube, transistor or similar electronic component.

**o.**   **Volcanic Action,** meaning direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(1)** Volcanic blast or airborne shock waves;

**(2)** Ash, dust or particulate matter; or

**(3)** Lava flow.

This peril does not provide coverage for damage to land; property in the open or in open sheds; or portions of buildings not completely enclosed, or personal property contained within those buildings.

All volcanic eruptions that occur within any 72-hour period will be considered as one volcanic eruption.

Direct loss includes the cost to remove the ash, dust or particulate matter from the interior and exterior surfaces of the covered building and from personal property contained in the building.

Payment for removal applies only to the initial deposit of ash, dust or particulate matter following a volcanic eruption. Subsequent deposits arising from the movement of volcanic dust or ash by wind or other means are not covered.

The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

**11. Ordinance Or Law**

**a.**   You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril **Insured** Against;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril **Insured** Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril **Insured** Against.

**b.**   You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

**c.**   We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)** The costs to comply with any ordinance or law which requires any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

---

## SECTION I - PERILS INSURED AGAINST

**COVERAGE A - DWELLING and**

**COVERAGE B - OTHER STRUCTURES**

We insure against risks of direct loss to property described in Coverages **A** and **B** only if that loss is a physical loss to property. We do not, however, insure for loss:

**1.** Involving collapse, other than as provided in Additional Coverage **8.**;

**2.** Caused by:

   **a.** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

   **(1)** Maintain heat in the building; or

   **(2)** Shut off the water supply and drain the system and appliances of water;

   **b.** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

   **(1)** Fence, pavement, patio or swimming pool;

   **(2)** Foundation, retaining wall or bulkhead; or

   **(3)** Pier, wharf or dock;

   **c.** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

   **d.** Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   **e.** Any of the following:

   **(1)** Wear and tear, marring, deterioration;

   **(2)** Inherent vice, latent defect, mechanical breakdown;

   **(3)** Smog, rust or other corrosion, mold, wet or dry rot;

   **(4)** Smoke from agricultural smudging or industrial operations;

   **(5)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril **Insured** Against under Coverage C of this policy.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

   **(6)** Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

   **(7)** Birds, vermin, rodents, insects; or

   **(8)** Animals owned or kept by an **insured**.

   But if loss or damage by collapse, as provided in **Additional Coverages**, Collapse, results, we will pay for that resulting loss or damage.

   If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

**3.** Excluded under Section I - Exclusions.

Under Items **1.** and **2.**, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

---

## COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in Section I - Exclusions.

**1. Fire or lightning.**

**2. Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a **fully enclosed building**.

**3. Explosion.**

**4. Riot or civil commotion.**

**5. Aircraft,** including self-propelled missiles and spacecraft.

**6. Vehicles** means a device designed or used to transport persons or property.

**7. Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations, such as slash burns.

**8. Vandalism or malicious mischief.**

**9. Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

    **a.** Committed by an **insured**;

    **b.** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

    **c.** From that part of a **residence premises** rented by an **insured** to other than an **insured**.

This peril does not include loss caused by theft that occurs off the **residence premises** of:

    **a.** Property while at any other residence owned by, rented to, or occupied by an **insured**, except while an **insured** is temporarily living there. Property of a student who is an **insured** is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

    **b.** Watercraft, including their furnishings, equipment and outboard engines or motors; or

    **c.** Trailers and campers.

However, property described in **b.** above is covered if, at the time of loss caused by theft, it is parked inside a private garage or in street parking areas immediately adjacent to the **residence premises**.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight of ice, snow or sleet** which causes damage to property contained in a building.

**12. Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

    **a.** To the system or appliance from which the water or steam escaped;

    **b.** Caused by or resulting from freezing except as provided in the peril of Freezing below; or

    **c.** On the **residence premises** caused by accidental discharge or overflow which occurs off the **residence premises**.

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

**13. Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating

system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14.** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is unoccupied, unless you have used reasonable care to:

    **a.**    Maintain heat in the building; or

    **b.**    Shut off the water supply and drain the system and appliances of water.

**15. Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

**16. Volcanic Action**, meaning direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

    **a.**    Volcanic blast or airborne shock waves;

    **b.**    Ash, dust or particulate matter; or

    **c.**    Lava flow.

This peril does not provide coverage for damage to land; property in the open or in open sheds; or portions of buildings not completely enclosed, or personal property contained within those buildings.

All volcanic eruptions that occur within any 72-hour period will be considered as one volcanic eruption.

Direct loss includes the cost to remove the ash, dust or particulate matter from the interior and exterior surfaces of the covered building and from personal property contained in the building.

Payment for removal applies only to the initial deposit of ash, dust or particulate matter following a volcanic eruption. Subsequent deposits arising from the movement of volcanic dust or ash by wind or other means are not covered.

---

## SECTION I - EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following.

**1. Ordinance Or Law**, meaning any ordinance or law:

    **a.**    Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **1.a.** does not apply to the amount of coverage that may be provided for under Additional Coverages, Glass Or Safety Glazing Material or Ordinance Or Law;

    **b.**    The requirements of which result in a loss in value to property; or

    **c.**    Requiring any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

**2. Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting. However, if loss or damage by fire, explosion or theft results, we will pay for that resulting loss or damage.

**3. Water Damage,** meaning:

    **a.**    Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

    **b.**    Water which backs up through sewers or drains or which overflows from a sump; or

    **c.**    Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, if loss or damage by fire, explosion or theft results, we will pay for that resulting loss or damage.

**4.** **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **residence premises**. But if the failure of power or other utility service results in a loss, from a Peril **Insured** Against on the **residence premises**, we will pay for the loss or damage caused by that Peril **Insured** Against.

**5.** **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss.

**6.** **War,** including the following and any consequence of any of the following:

   **a.** Undeclared war, civil war, insurrection, rebellion, revolution;

   **b.** Warlike act by a military force or military personnel; or

   **c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7.** **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of Section I - Conditions.

**8.** **Intentional Loss,** meaning any loss arising out of any act committed:

   **a.** By or at the direction of an **insured**; and

   **b.** With the intent to cause a loss.

**9.** **Weather Conditions**

This exclusion only applies if weather conditions contribute in any way with a cause or event excluded in this policy to produce the loss. However, if loss or damage by fire or explosion results in loss to property described in Coverages **A** and **B** we will pay for that resulting loss or damage.

**10. Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body. However, if loss or damage by fire or explosion results in loss to property described in Coverages **A** and **B**, we will pay for that resulting loss or damage.

**11.** Faulty, inadequate or defective:

   **a.** Planning, zoning, development, surveying, siting;

   **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **c.** Materials used in repair, construction, renovation or remodeling; or

   **d.** Maintenance;

of part or all of any property whether on or off the **residence premises**.

However, if loss or damage by fire or explosion results in loss to property described in Coverages **A** and **B**, we will pay for that resulting loss or damage.

---

## SECTION I - CONDITIONS

**1.** **Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   **a.** To the **insured** for more than the amount of the **insured's** interest at the time of loss; or

   **b.** For more than the applicable limit of liability.

**2.** **Your Duties After Loss**

In case of a loss to covered property, you must see that the following are done:

   **a.** Give prompt notice to us or our agent;

   **b.** Notify the police in case of loss by theft;

   **c.** Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

   **d.** Protect the property from further damage. If repairs to the property are required, you must:

      **(1)** Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

**e.** Prepare an inventory of damaged personal property showing the quantity, description, **actual cash value** and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**f.** As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other **insured**, and sign the same;

**g.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the **insured** and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in **2.e.** above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery And Counterfeit Money coverage, stating the amount and cause of loss.

**3. Loss Settlement**

Covered property losses are settled as follows:

**a.** Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

**at actual cash value** at the time of loss but not more than the amount required to repair or replace.

**b.** Buildings under Coverage **A** or **B** at **replacement cost** without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full **replacement cost** of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The **replacement cost** of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full **replacement cost** of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The **actual cash value** of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the **replacement cost** of the building.

(3) To determine the amount of insurance required to equal 80% of the full **replacement cost** of the

building immediately before the loss, do not include the value of:

(a)  Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b)  Those supports in **(a)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c)  Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.**(1)** and b.**(2)** above.

However, if the cost to repair or replace the damage is both:

(a)  Less than 5% of the amount of insurance in this policy on the building; and

(b)  Less than $2500;

we will settle the loss according to the provisions of **b.(1)** and **b.(2)** above whether or not actual repair or replacement is complete.

(5) You may disregard the **replacement cost** loss settlement provisions and make claim under this policy for loss or damage to buildings on an **actual cash value** basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition **3.** Loss Settlement.

**4.   Loss to a Pair or Set**

In case of loss to a pair or set we may elect to:

**a.**   Repair or replace any part to restore the pair or set to its value before the loss; or

**b.**   Pay the difference between **actual cash value** of the property before and after the loss.

**5.   Glass Replacement**

Loss for damage to glass caused by a Peril **Insured** Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

**6.   Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **residence premises** is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**a.**   Pay its own appraiser; and

**b.**   Bear the other expenses of the appraisal and umpire equally.

**7.   Other Insurance**

If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

**8.   Suit Against Us**

No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

**9.   Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

**10. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

a.    Reach an agreement with you;

b.    There is an entry of a final judgment; or

c.    There is a filing of an appraisal award with us.

**11.  Abandonment Of Property**

We need not accept any property abandoned by an **insured**.

**12.  Mortgage Clause**

Insurance Commissioner's Regulation No. 335/WAC-284-21-010 requires that Form **372 (Ed. 11-50)** or Form **438 BFU (Ed. 5-42)** be endorsed on this policy, if applicable.

**13.  No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14.  Nuclear Hazard Clause**

a.    "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b.    Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils **Insured** Against in Section **I**.

c.    This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**15.  Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

---

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

**1.**    Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

**2.**    Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability.

### COVERAGE F - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except **residence employees**. As to others, this coverage applies only:

**1.**    To a person on the **insured location** with the permission of an **insured**; or

**2.**    To a person off the **insured location**, if the **bodily injury**:

a.    Arises out of a condition on the **insured location** or the ways immediately adjoining;

b.    Is caused by the activities of an **insured**;

c.    Is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

d.    Is caused by an animal owned by or in the care of an **insured**.

---

**SECTION II - EXCLUSIONS**

---

**1.** **Coverage E - Personal Liability and Coverage F - Medical Payments To Others** do not apply to **bodily injury** or **property damage:**

**a.** Which is expected or intended by one or more **insureds;**

**b.** Arising out of or in connection with a **business** engaged in by an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business;**

**c.** Arising out of the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply to the rental or holding for rental of an **insured location:**

**(1)** On an occasional basis if used only as a residence;

**(2)** In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(3)** In part, as an office, school, studio or private garage;

**d.** Arising out of the rendering of or failure to render professional services;

**e.** Arising out of a premises:

**(1)** Owned by an **insured;**

**(2)** Rented to an **insured;** or

**(3)** Rented to others by an **insured;**

that is not an **insured** location;

**f.** Arising out of:

**(1)** The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an **insured;**

**(2)** The entrustment by an **insured** of a motor vehicle or any other motorized land conveyance to any person; or

**(3)** Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in Paragraph **(1)** or **(2)** above.

This exclusion does not apply to:

**(1)** A trailer not towed by or carried on a motorized land conveyance;

**(2)** A motorized land conveyance which is both designed and used exclusively for recreational purposes off public roads, not subject to licensing requirements and:

**(a)** Not owned by an **insured;** or

**(b)** Owned by an **insured** and on an **insured location**.

**(3)** A motorized golf cart when used to play golf on a golf course;

**(4)** A vehicle or conveyance not subject to motor vehicle registration which is:

**(a)** Used exclusively to service an **insured's** residence; or

**(b)** In dead storage on an **insured location**.

**(5)** A vehicle or conveyance which is both designed and used exclusively for assisting the handicapped and has a maximum attainable speed of 10 miles per hour.

**g.** Arising out of:

**(1)** The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

**(2)** The entrustment by an **insured** of an excluded watercraft described below to any person; or

**(3)** Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an **insured**. This exclusion does not apply to

Copyright, Washington Surveying and Rating Bureau, includes copyrighted material of Insurance Services Office, Inc. with its permission, 1996

watercraft:

**(1)** That are not sailing vessels and are powered by:

**(a)** Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an **insured**;

**(b)** Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an **insured**;

**(c)** One or more outboard engines or motors with 25 total horsepower or less;

**(d)** One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an **insured**;

**(e)** Outboard engines or motors of more than 25 total horsepower owned by an **insured** if:

**(i)** You acquire them prior to the policy period; and

**(a)** You declare them at policy inception; or

**(b)** Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

**(ii)** You acquire them during the policy period.

This coverage applies for the policy period.

**(2)** That are sailing vessels, with or without auxiliary power:

**(a)** Less than 26 feet in overall length;

**(b)** 26 feet or more in overall length, not owned by or rented to an **insured**.

**(3)** That are stored;

**h.** Arising out of:

**(1)** The ownership, maintenance, use, loading or unloading of an aircraft;

**(2)** The entrustment by an **insured** of an aircraft to any person; or

**(3)** Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

**i.** Caused directly or indirectly by war, including the following and any consequence of any of the following:

**(1)** Undeclared war, civil war, insurrection, rebellion or revolution;

**(2)** Warlike act by a military force or military personnel; or

**(3)** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**j.** Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**k.** Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and **812.** Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the order of a licensed physician.

Exclusions **e., f., g.,** and **h.** do not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

**2.** **Coverage E - Personal Liability**, does not apply to:

**a.** Liability:

**(1)** For any loss assessment charged against you as a member of an association, corporation or community of property owners;

**(2)** Under any contract or agreement. However, this exclusion does not apply to written contracts:

**(a)** That directly relate to the ownership, maintenance or use of an **insured location**; or

    **(b)** Where the liability of others is assumed by the **insured** prior to an **occurrence**;

unless excluded in **(1)** above or elsewhere in this policy;

**b.**   **Property damage** to property owned by the **insured**;

**c.**   **Property damage** to property rented to, occupied or used by or in the care of the **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

**d.**   **Bodily injury** to any person eligible to receive any benefits:

    **(1)** Voluntarily provided; or

    **(2)** Required to be provided;

by the **insured** under any:

    **(1)** Workers' compensation law;

    **(2)** Non-occupational disability law; or

    **(3)** Occupational disease law;

**e.**   **Bodily injury** or **property damage** for which an **insured** under this policy:

    **(1)** Is also an **insured** under a nuclear energy liability policy; or

    **(2)** Would be an **insured** under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

    **(1)** American Nuclear Insurers;

    **(2)** Mutual Atomic Energy Liability Underwriters;

    **(3)** Nuclear Insurance Association of Canada;

or any of their successors; or

**f.** **Bodily injury** to you or an **insured** within the meaning of Part **a.** or **b.** of **insured** as defined.

3.   **Coverage F - Medical Payments To Others**, does not apply to **bodily injury**:

   **a.**   To a **residence employee** if the **bodily injury**:

    **(1)** Occurs off the **insured location**; and

    **(2)** Does not arise out of or in the course of the residence employee's employment by an **insured**;

   **b.**   To any person eligible to receive benefits:

    **(1)** Voluntarily provided; or

    **(2)** Required to be provided;

under any:

    **(1)** Workers' compensation law;

    **(2)** Non-occupational disability law; or

    **(3)** Occupational disease law;

   **c.**   From any:

    **(1)** Nuclear reaction;

    **(2)** Nuclear radiation; or

    **(3)** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

    **(4)** Any consequence of any of these; or

   **d.**   To any person, other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

---

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

**1.**   **Claim Expenses**

We pay:

**a.** Expenses we incur and costs taxed against an **insured** in any suit we defend;

**b.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

**c.** Reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

**d.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**2. First Aid Expenses**

We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

**3. Damage To Property Of Others**

We will pay, at **replacement cost**, up to $500 per **occurrence** for **property damage** to property of others caused by an **insured**.

We will not pay for **property damage**:

**a.** To the extent of any amount recoverable under Section I of this policy;

**b.** Caused intentionally by an **insured** who is 13 years of age or older;

**c.** To property owned by an **insured**;

**d.** To property owned by or rented to a tenant of an **insured** or a resident in your household; or

**e.** Arising out of:

(1) A **business** engaged in by an **insured**;

(2) Any act or omission in connection with a premises owned, rented or controlled by an **insured**, other than the **insured location**; or

(3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance which is designed and used exclusively for recreational purposes off public roads, not subject to licensing requirements and not owned by an **insured**.

**4. Loss Assessment**

We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

**a.** **Bodily injury** or **property damage** not excluded under Section II of this policy; or

**b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

(2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

**a.** One accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

**b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

**HO 00 03 08 96**   Copyright, Washington Surveying and Rating Bureau, includes copyrighted material of Insurance Services Office, Inc. with its permission, 1996   **Page 19 of 23**

The following do not apply to this coverage:

1. Section **II** - Coverage **E** - Personal Liability Exclusion **2.a.(1)**;
2. Condition **1.** Policy Period, under Sections **I** And **II** Conditions.

---

## SECTION II - CONDITIONS

**1. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage **E** as shown in the Declarations. This limit is the same regardless of the number of **insureds**, claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence**.

Our total liability under Coverage **F** for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

**2. Severability Of Insurance**

This insurance applies separately to each **insured**. This condition will not increase our limit of liability for any one **occurrence**.

**3. Duties After Loss**

In case of an accident or **occurrence**, the **insured** will perform the following duties that apply. You will help us by seeing that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:

**(1)** The identity of the policy and **insured**;

**(2)** Reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

**(3)** Names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

c. At our request, help us:

**(1)** To make settlement;

**(2)** To enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured**;

**(3)** With the conduct of suits and attend hearings and trials; and

**(4)** To secure and give evidence and obtain the attendance of witnesses;

d. Under the coverage - Damage To Property Of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the **insured's** control;

e. The **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **bodily injury**.

**4. Duties Of An Injured Person - Coverage F - Medical Payments To Others**

The injured person or someone acting for the injured person will:

a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**5. Payment Of Claim - Coverage F - Medical Payments To Others**

Payment under this coverage is not an admission of liability by an **insured** or us.

**6. Suit Against Us**

No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an **insured**. Also, no action with respect to Coverage **E** can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

**7.    Bankruptcy Of An Insured**

Bankruptcy or insolvency of an **insured** will not relieve us of our obligations under this policy.

**8.    Other Insurance - Coverage E - Personal Liability**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

### SECTIONS I AND II - CONDITIONS

**1.    Policy Period**

This policy applies only to loss in Section **I** or **bodily injury** or **property damage** in Section **II**, which occurs during the policy period.

**2.    Concealment Or Fraud**

   **a.**    Under Section **I** - Property Coverages, with respect to all **insured**s covered under this policy, we provide no coverage for loss under Section **I** - Property Coverages if, whether before or after a loss, one or more **insured**s have:

   **(1)** Intentionally concealed or misrepresented any material fact or circumstance; or

   **(2)** Engaged in fraudulent conduct;

   relating to this insurance.

   **b.**    Under Section **II** - Liability Coverages, we do not provide coverage to one or more **insured**s who, whether before or after a loss, have:

   **(1)** Intentionally concealed or misrepresented any material fact or circumstance; or

   **(2)** Engaged in fraudulent conduct;

   relating to this insurance.

**3.    Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

**4.    Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any rights.

**5.    Cancellation**

   **a.**    You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   **b.**    We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice, together with our reason for cancellation, will be mailed to you and, if applicable, your agent or broker at the last addresses known to us or shown by our records. Proof of mailing will be sufficient proof of notice.

   **(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   **(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 45 days before the date cancellation takes effect.

**(3)** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

**(a)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

**(b)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 45 days before the date cancellation takes effect.

**(4)** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 45 days before the date cancellation takes effect.

However, with respect to Paragraphs **b.(2)**, **(3)** and **(4)** above, if two or more of the following conditions exist at any building that is covered under this policy, we may cancel this policy by letting you and, if applicable, your agent or broker know at least 5 days before the date cancellation takes effect. We will also let any mortgagee or other person shown by the policy to have an interest in a covered loss know at least 20 days before the date cancellation takes effect.

**(1)** Without reasonable explanation, the building is unoccupied for more than 60 consecutive days, or at least 65% of the rental units are unoccupied for more than 120 consecutive days unless the building is maintained for seasonal occupancy or is under construction or repair;

**(2)** Without reasonable explanation, progress toward completion of permanent repairs to the building has not occurred within 60 days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

**(3)** Because of its physical condition, the building is in danger of collapse;

**(4)** Because of its physical condition, a vacation or demolition order has been issued for the building, or it has been declared unsafe in accordance with applicable law;

**(5)** Fixed and salvageable items have been removed from the building, indicating an intent to vacate the building;

**(6)** Without reasonable explanation, heat, water, sewer, and electricity are not furnished for the building for 60 consecutive days; or

**(7)** The building is not maintained in substantial compliance with fire, safety and building codes.

**c.**     When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**d.**     If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it as soon as possible, but no later than:

**(1)** 45 days after we send a notice of cancellation to you; or

**(2)** 30 days after we receive the policy or a notice of cancellation from you.

**e.**     Except as noted above if the policy is cancelled by us, we will give the same advance notice of cancellation in writing to any mortgagee or other person shown by the policy to have an interest in a covered loss as we give to you. The cancellation notice may be delivered or mailed; if mailed, proof of mailing will be sufficient proof of notice.

## 6.  Nonrenewal

We may elect not to renew this policy. We may do so by mailing to you and, if applicable, your agent or broker at the last adresses known to us or shown by our records, written notice, including our reason for refusing to renew, at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

If we have offered in writing, either directly or through our agent, at least 20 days before the expiration date of this policy, to renew this policy, and have included a statement of the renewal premium due, we may terminate this policy on its expiration date if you fail to pay the required premium when due.

For the purpose of determining the date when nonrenewal can be effected: A policy with a term of six months or less is considered as if written for a policy period of six months. A policy written for a term longer than one year or a policy with no fixed expiration date is considered as if written for a period of one year.

## 7.  Assignment

Assignment of this policy will not be valid unless we give our written consent.

**HO 00 03 08 96**              Copyright, Washington Surveying and Rating Bureau,              **Page 22 of 23**
includes copyrighted material of
Insurance Services Office, Inc. with its permission, 1996

**8.   Subrogation**

An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section **II** to Medical Payments To Others or Damage To Property Of Others.

**9.   Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies:

    **a.**    We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

    **b.**    **Insured** includes:

        **(1)** Any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

        **(2)** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – WASHINGTON

As used in this endorsement **domestic abuse** means:

1. Physical harm, bodily injury, assault or the infliction of fear of imminent physical harm, **bodily injury** or assault between family or household members;

2. Sexual assault of one family or household member by another;

3. Stalking, as defined in RCW 9A.46.110 of one family or household member by another family or household member; or

4. Intentionally, knowingly or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

**DEFINITIONS**

Item **3. Business** is deleted and replaced by the following:

3. **Business** means:

   a. A trade, profession, occupation, or enterprise engaged in on a full-time, part-time or occasional basis;

   b. The lease of land, buildings, structures or personal property; or

   c. Any other activity engaged in for money, expectation of remuneration or monetary gain, or other compensation, financial or otherwise, except the following:

      (1) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity:

      (2) Providing home day care services for which no compensation is received, other than mutual exchange of such services; or

      (3) The rendering of home day care services to a relative of an **insured**.

**SECTION I – PROPERTY COVERAGES**

**ADDITIONAL COVERAGES**

Item **8. Collapse** is deleted and replaced by the following:

8. **Collapse**

   a. With respect to this Additional Coverage:

      (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

      (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

      (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

      (4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging bending, leaning, settling, shrinkage or expansion.

   b. We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if the collapse was caused by one or more of the following:

      (1) Perils Insured Against in Coverage **C**;

      (2) Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an **insured** prior to collapse;

      (3) Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an **insured** prior to collapse;

      (4) Weight of contents, equipment, animals or people;

      (5) Weight of rain which collects on a roof; or

      (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Includes copyrighted material of Washington Surveying and Rating Bureau and
Insurance Services Office, Inc., with its permission 2000, 2010

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under Items **(2)**, **(3)**, **(4)**, **(5)**, and **(6)** unless the loss is a direct result of the collapse of a building or any part of a building.

This coverage does not increase the limit of liability applying to the damaged covered property

c. If Endorsement **HO 46 15** or **HH 46 15** is attached to the policy, Section I – **Additional Coverages 8. Collapse** in that endorsement is deleted in its entirety and Paragraph **b.(1)** above is deleted and replaced by the following:

**b.(1)** Perils Insured Against in Coverages **A.** and **B.**

In addition, the following paragraph is added:

This additional coverage does not apply to Coverage **C** – Personal Property.

d. If Endorsement **HO 46 31** or **HH 17 31** is attached to the policy, Section I – **Additional Coverages 8. Collapse** in the Endorsement is deleted in its entirety and Paragraph **b.(1)** above is deleted and replaced by the following:

**b.(1)** Perils Insured Against in Coverage **A.**

In addition, the following paragraph is added:

This additional coverage does not apply to Coverage **C** – Personal Property.

## SECTION I – PERILS INSURED AGAINST

We insure for all loss or damage caused by fire or any damage caused by lightning.

For forms **HO 00 04** and **HO 00 06**, the following changes apply:

Item **14. Freezing** and item **15. Sudden and accidental damage from artificially generated electrical current** are deleted and replaced by the following:

### 14. Freezing

a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

### 15. Sudden and accidental damage from artificially generated electrical current

This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

For form **HO 00 03** the following changes apply.

## COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES

Item **1.** and item **2.a.** are deleted and replaced by the following:

1. Involving collapse, including any of the following:

a. An abrupt falling down or caving in;

b. Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

c. Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such relates to **a.** or **b.** above;

Except as provided in additional coverage **8. Collapse.**

2. Caused by:

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water;

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

If Endorsement **HH 46 15** is attached to the policy, the language of item **1.b.(1)** of the endorsement is deleted and replaced by the language of **2.a.** above.

Includes copyrighted material of Washington Surveying and Rating Bureau and Insurance Services Office, Inc., with its permission 2000, 2010

If Endorsement **HH 46 31** is attached to the policy, the language of item **3.a.** of the endorsement is deleted and replaced by the language of **2.a.** above.

Item **2.e.(3)** is deleted and replaced by the following:

      **(3)** Smog, rust or other corrosion, fungus, mold, wet or dry rot;

In Endorsements:

In form or **HH 46 15,** Special Personal Property Coverage, this is Item **1.b.(4)(c)** under Section I – Perils Insured Against.

In form **HO 04 14,** Special Computer Coverage, this is Item **B.(3)(c)** under Perils Insured Against.

In form or **HH 46 31,** Unit-Owners Coverage **C,** this is Item **3.d.(3)** under Section I – Perils Insured Against.

Item **2.e.(7)** is deleted and replaced by the following:

      **(7)** Birds, rodents, insects, nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

In form **HH 46 15,** Special Personal Property Coverage, this is Item **1.b.(4)(g)** under Section I – Perils Insured Against.

In form **HO 04 14,** Special Computer Coverage, this is Item **B.(3)(c)** under Perils Insured Against.

In form **HH 46 31,** Unit-Owners Coverage **C,** this is Item **3.d.(7)** under Section I – Perils Insured Against.

## COVERAGE C – PERSONAL PROPERTY

Item **14. Freezing** and item **15. Sudden and accidental damage from artificially generated electrical current** are deleted and replaced by the following:

**14. Freezing**

  **a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

    **(1)** Maintain heat in the building; or

    **(2)** Shut off the water supply and drain all systems and appliances of water.

    However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

  **b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden and accidental damage from artificially generated electrical current**

    This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

## SECTION I – EXCLUSIONS

The introductory paragraph is deleted and replaced by the following:

We do not insure for loss caused directly or indirectly by any of the following. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

Item **2. Earth Movement** is deleted and replaced by the following:

**2. Earth Movement**

    Earth Movement means:

  **a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

  **b.** Landslide, mudslide or mudflow;

  **c.** Subsidence or sinkhole; or

  **d.** Any other earth movement including earth sinking, rising or shifting.

    This Exclusion **2.** applies if any of the above, in **2.a.** through **d.:**

    **(1)** Occurs independently;

    **(2)** Is caused by an act of nature; or

    **(3)** Is caused by an act or omission of humans or animals.

    However, direct loss by fire, explosion or theft resulting from any of the above, in **2.a.** through **d.,** is covered.

Item **3. Water Damage** is deleted and replaced by the following:

**3. Water**

  **a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

  **b.** Water which:

    **(1)** Backs up through sewers or drains; or

    **(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

c. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

d. Waterborne material carried or otherwise moved by any of the water referred to in **3.a.** through **c.** of this exclusion.

This Exclusion **3.** applies if any of the above, in **3.a.** through **d.:**

(1) Occurs independently;

(2) Is caused by an act of nature;

(3) Is caused by an act or omission of humans or animals; or

(4) Is attributable to the failure, in whole or in part, of a dam, levee, seawall or other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **3.a.** through **d.,** is covered.

Item **8. Intentional Loss** is deleted and replaced by the following:

**8. Intentional Loss**

a. We do not provide coverage for any loss arising out of any act committed by or at the direction of an **insured** with the intent to cause a loss.

b. However, this exclusion or the Concealment Or Fraud Condition **2.a.,** applicable to Section I – Property Coverages, will not apply to deny an **insured's** claim for an otherwise covered property loss if such loss is caused by an act of **domestic abuse** by another **insured** under the policy, and the **insured** making claim:

(1) Files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and

(2) Did not cooperate in or contribute to the creation of the loss.

c. If we pay a claim pursuant to Paragraph **8.b.,** our payment to the **insured** is limited to that **insured's** insurable interest in the property less any payments we first made to a mortga-gee or other party with a legal secured interest in the property. In no event will we pay more than the limit of liability.

## SECTION II – LIABILITY COVERAGES

Under **Coverage E – Personal Liability,** Item **2.** is deleted and replaced by the following:

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of payment for this coverage has been exhausted by payment of judgments or settlements.

## SECTION II – EXCLUSIONS

Under **1. Coverage E – Personal Liability** and **Coverage F – Medical Payments To Others,** Items **a., b.** and **c.** are deleted and replaced by the following:

a. Which is expected or intended by one or more **insured** even if the resulting **bodily injury** or **property damage:**

(1) Is of a different kind, quality or degree than initially expected or intended; or

(2) Is sustained by a different person, entity or property than initially expected or intended.

b. Arising out of or in connection with a **business** conducted from an **insured location** or engaged in by an **insured,** whether or not the **business** is owned or operated by an **insured** or employs an **insured.**

This Exclusion **1.b.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business.**

c. Arising out of the rental or holding for rental of any part of any premises by an **insured** including, but not limited to, the lease of land for extracting gas, oil, minerals or other inert substances from the land.

These exclusions **1.b.** and **1.c.** do not apply to:

The rental or holding for rental of an **insured location;**

(1) On an occasional basis if used only as a residence;

(2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(3) In part, as an office, school, studio or private garage.

The following provisions are added:

l. Arising out of any written or oral statement made by you or others on your behalf which is material to the sale of any property.

m. Arising out of a criminal act of any **insured.**

n. Arising out of an intentional and malicious act by or at the direction of any **insured.**

**SECTIONS I AND II – CONDITIONS**

Under item **5. Cancellation** paragraph **5.a.** is deleted and replaced by the following:

    **a.** You may cancel this policy at any time by notifying us or the insurance producer of the date cancellation is to take effect in one of the following ways:

        **(1)** Returning of this policy to us;

        **(2)** Written notice by mail, facsimile or e-mail; or

        **(3)** Verbal notice.

        If the date of cancellation is not specified, cancellation shall take effect upon our receipt of such notice.

Item **8. Subrogation** is amended by the addition of the following:

    If we pay an **insured,** who is a victim of **domestic abuse,** for a loss caused by an act of **domestic abuse,** the rights of that **insured** to recover damages from the perpetrator of the abuse are transferred to us to the extent of our payment. That **insured** may not waive such rights to recover against the perpetrator of the **domestic abuse.**

All other provisions of this policy apply.

HOMESITE INSURANCE COMPANY OF THE
MIDWEST

HH 80 06 08 02

THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

## WINDSTORM OR HAIL FIXED-DOLLAR DEDUCTIBLE

**Windstorm Or Hail
Deductible Amount\***
$500

For the premium charged, we will pay only that part of the total of the loss for all Section I Property Coverages that exceeds the windstorm or hail deductible stated in this endorsement. This deductible applies in the event of direct physical loss to property covered under this policy caused directly or indirectly by windstorm or hail. Such deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss. No other deductible provision in the policy applies to direct physical loss caused by windstorm or hail.

\*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc.,  1996

HOMEOWNERS
HO 04 96 04 91

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

<u>NO</u> SECTION II - LIABILITY COVERAGES FOR
HOME DAY CARE BUSINESS
<u>LIMITED</u> SECTION I - PROPERTY COVERAGES FOR
HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business."  Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

**1.** Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion **1.b.** of Section II - Exclusions;

**2.** Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";

**3.** Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - item **8.** imposes that limit on "business" property on the "residence premises." (Item **8.** corresponds to item **5.** in Form **HO 00 08.**);

**4.** Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - item **9.** imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item **9.** does not apply to adaptable electronic apparatus as described in Special Limit of Liability items **10.** and **11.** (Items **9.**, **10.** and **11.** correspond to items **6.**, **7.** and **8.** respectively in Form **HO 00 08.**)

**THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.**

HOMEOWNERS
HO 04 98 04 91

## THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

## REFRIGERATED PROPERTY COVERAGE

For an additional premium, we insure, up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

**1.** Interruption of electrical service to the refrigeration unit. The interruption must be caused by damage to the generating or transmitting equipment; or

**2.** Mechanical failure of the unit storing the property.

Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

This endorsement does not increase the limit of liability for Coverage C - Personal Property.

The Section I - Power Failure exclusion does not apply to this coverage.

**Special Deductible**

The following deductible applies to covered loss to refrigerated property:

We will pay only that part of the loss that exceeds $100.   No other deductible applies to this coverage.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc.,  1990

**HOMEOWNERS**
**HO 04 20 06 94**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR
## COVERAGE A - DWELLING
### Forms HO 00 02 and HO 00 03 Only

**(Applies only when loss to dwelling building exceeds the
Coverage A Limit of Liability shown in the Declarations)**

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

**A.** If you have:

    **1.** Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

        **a.** The property evaluations we make; and

        **b.** Any increases in inflation; and

    **2.** Notified us, within 30 days of completion, of any improvements, alterations or additions to the dwelling building which increase the replacement cost of the dwelling building by 5% or more;

the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged or destroyed dwelling building.

**B.** If there is a loss to the dwelling building that exceeds the Coverage A limit of liability shown in the Declarations, for the purpose of settling that loss only:

    **1.** We will provide an additional amount of insurance, up to 25%* of the Coverage A limit of liability; and

    **2.** The Section I Condition **3.** Loss Settlement paragraph **b.** is deleted and replaced by paragraphs **b.**, **c.**, and **d.** as follows:

    **b.** The dwelling building under Coverage A at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts for like construction and use on the same premises:

    **(1)** The replacement cost of that part of the dwelling building damaged or destroyed;

    **(2)** The necessary amount actually spent to repair or replace the damaged or destroyed dwelling building; or

    **(3)** The limit of liability under this policy that applies to the dwelling building, plus any additional amount provided by this endorsement.

    **c.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

    **d.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to the dwelling building on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

HOMEOWNERS
HO 04 90 04 91

## THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

## PERSONAL PROPERTY REPLACEMENT COST

### SECTION I

For an additional premium, covered losses to the following property are settled at replacement cost at the time of loss:

**a.** Coverage C - Personal Property;

**b.** If covered in this policy, awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

Personal Property Replacement Cost coverage will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy:

**a.** Jewelry;

**b.** Furs and garments trimmed with fur or consisting principally of fur;

**c.** Cameras, projection machines, films and related articles of equipment;

**d.** Musical equipment and related articles of equipment;

**e.** Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry; and

**f.** Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost coverage will not apply to other classes of property separately described and specifically insured.

### 1. PROPERTY NOT ELIGIBLE

Property listed below is not eligible for replacement cost settlement.  Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

**a.** Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

**b.** Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

**c.** Articles not maintained in good or workable condition.

**d.** Articles that are outdated or obsolete and are stored or not being used.

### 2. REPLACEMENT COST

The following loss settlement procedure applies to all property insured under this endorsement:

**a.** We will pay no more than the least of the following amounts:

**(1)** Replacement cost at the time of loss without deduction for depreciation;

**(2)** The full cost of repair at the time of loss;

**(3)** The limit of liability that applies to Coverage C, if applicable;

**(4)** Any applicable special limits of liability stated in this policy; or

**(5)** For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.

**b.** When the replacement cost for the entire loss under this endorsement is more than $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is complete.

**c.** You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

All other provisions of this policy apply.

 Copyright, Insurance Services Office, Inc., 1990

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PERSONAL INJURY - Washington

For an additional premium, under **Coverage E - Personal Liability,** the definition "bodily injury" is amended to include personal injury.

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of privacy occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

**Section II - Exclusions** do not apply to personal injury. Personal injury insurance does not apply to:

1. Liability assumed by the "insured" under any contract or agreement except any indemnity obligation assumed by the "insured" under a written contract directly relating to the ownership, maintenance or use of the premises;

2. Injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an "insured";

3. Injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the "insured";

4. Injury arising out of or in connection with a "business" engaged in by an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

5. Civic or public activities performed for pay by an "insured"; or

6. Injury to you or an "insured" within the meaning of part **a.** or **b.** of "insured" as defined.

7. Injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

8. Any loss, cost or expense arising out of any:

   a. Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

   b. Claim or suit by or on behalf of governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

All other provisions of this policy apply.

Copyright, Washington Surveying and Rating Bureau, includes copyrighted material of Insurance Services Office, Inc. with its permission,  2000

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

# IDENTITY FRAUD EXPENSE COVERAGE – WASHINGTON

## DEFINITIONS

With respect to the provisions of this endorsement only, the following definitions are added:

1. "Identity fraud" means the act of knowingly transferring or using, without lawful authority, a means of identification of an "insured" with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

2. "Expenses" means:

    a. Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies.

    b. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors.

    c. Lost income resulting from time taken off work to complete fraud affidavits, meet with or talk to law enforcement agencies, credit agencies and/or legal counsel, up to a maximum payment of $200 per day. Total payment for lost income is not to exceed $5,000.

    d. Loan application fees for reapplying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

    e. Reasonable attorneys' fees incurred as a result of "identity fraud" to:

        (1) Defend lawsuits brought against an "insured" by merchants, financial institutions or their collection agencies;

        (2) Remove any criminal or civil judgments wrongly entered against an "insured"; and

        (3) Challenge the accuracy or completeness of any information in a consumer credit report.

    f. Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "identity fraud".

The following Additional Coverage is added under **Section I:**

## IDENTITY FRAUD EXPENSE

We will pay up to $15,000 for "expenses" incurred by an "insured" as the direct result of any one "identity fraud" first discovered or learned of during the policy period.

Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against an "insured", is considered to be one "identity fraud", even if a series of acts continues into a subsequent policy period.

This coverage is additional insurance.

## EXCLUSIONS

The following additional exclusions apply to this coverage:

We do not cover:

1. Loss arising out of or in connection with a "business".

2. "Expenses" incurred due to any fraudulent, dishonest or criminal act by an "insured" or any person aiding or abetting an "insured", or by any authorized representative of an "insured", whether acting alone or in collusion with others.

3. Loss other than "expenses".

## SPECIAL DEDUCTIBLE

We will pay only that part of the loss that exceeds $250. No other deductible applies to "identity fraud" expense coverage.

## SECTION I – CONDITION

## B. Duties After Loss

The following is added:

Send to us, within 60 days after our request, receipts, bills or other records that support your claim for "expenses" under "identity fraud" coverage.

Copyright, Washington Surveying and Rating Bureau, Inc., 2007
Includes copyrighted material of
Insurance Services Office, Inc., with its permission

# Exhibit C



SENT VIA REGULAR & CERTIFIED MAIL


September 20, 2020



Robert Howell, Jr.
4890 Mosquito Lake Rd.
Deming, WA 98244-9303


        RE:    *Sierra Pacific Land & Timber Company v. Robert Howell, Jr.*
              State of Washington, Whatcom County Supreme Court Case No. 20-2-01247-37
              Plaintiff:    Sierra Pacific Land & Timber Company
              Policy No.   31835622
              Insured      Robin Howell & Robert Howell
              Claim No.   01-003-881793

Dear Mr. Howell:

I am a litigation specialist assigned to this matter on behalf of Homesite Insurance Company ("Homesite").

Please accept this letter as Homesite's initial coverage position and reservation of rights regarding coverage for a lawsuit captioned as *Sierra Pacific Land & Timber Company v. Robert Howell, Jr.,* Superior Court of the State of Washington, Whatcom County, Case No. 20-2-01247-37 (the "Lawsuit"), filed on December 3, 2020, but not tendered to Homesite until early July 2021.

Please be advised that Homesite's investigation regarding coverage for the Lawsuit is ongoing. Based on our review of the Lawsuit and the potentially applicable Homesite policies, we are advising you that Homesite may not owe indemnity obligations for some, or all, of the claims and damages alleged in the Lawsuit.  At this time, Homesite agrees to defend you in the Lawsuit pursuant to a full reservation of Homesite's rights under the policies and applicable law, which are discussed below. Homesite has retained Joshua Hayward of the firm Smith, Freed & Eberhard, PC to defend you against the Lawsuit. Mr. Hayward's contact details are as follows:

Smith, Freed & Eberhard, PC
1215 Fourth Avenue, Suite 900
Seattle, WA 98161
(206) 576-7575
jhayward@smithfreed.com

## I.    <u>Factual Background</u>

The following facts are based in part upon the allegations contained in the Lawsuit. These allegations are recited here simply for the purpose of explaining Homesite's coverage position and should not be construed as a comment or opinion on their truthfulness.  That said, please advise if you believe that we have misunderstood or misconstrued these allegations.

The plaintiff in the Lawsuit, Sierra Pacific Land & Timber Company ("SPLT"), alleges that it is the owner of certain property described in the Lawsuit by tax parcels ("SPLT Property").  It alleges that your parents, Robert Howell, Sr. ("Howell Sr.") and Robin Howell ("Ms. Howell") purchased neighboring property located at 4890 Mosquito Lake Road, Deming, Washington ("4890 Property") in 1976.

It alleges that the 4890 Property has a small hydroelectric plant that draws water from natural streams on the SPLT Property through a series of water intakes and water pipelines to serve the hydroelectric plant.  It alleges that SPLT's predecessor, Georgia-Pacific Corporation ("GPC"), granted a non-exclusive easement in gross ("Easement") to Howell, Sr. and Ms. Howell in 1978, and that pursuant to a divorce decree, Ms. Howell acquired the 4890 Property from Howell, Sr. in 2014.

SPLT alleges that the Easement allowed the construction, use, and maintenance of a water pipeline over parts of the SPLT property, and specifically allows construction, repair, maintenance, service, and operation of a water pipeline over an area 10 feet wide by 450 feet long on the SPLT Property. SPLT alleges that the Easement terminates automatically if the grantee fails to use it for any continuous period of twenty-four (24) months.  SPLT alleges that Howell, Sr. was allowed to lay water intakes and water pipeline in other locations outside the Easement area on the SPLT Property so long as the pipeline and constructing, repairing, maintaining, servicing, and operating the same did not interfere SPLT's and GPC's forest practice operations.

SPLT alleges that Howell, Sr. laid several thousands of feet of water pipeline on the SPLT Property outside the Easement area ("Water Pipelines"). It alleges that the Water Pipelines are used to provide water to the 4890 Property for use at its small hydroelectric plant, and these Water Pipelines are not used to provide domestic water to the 4890 Property or to other property owned by members of the Howell family immediately west of the 4890 Property.

SPLT alleges that Howell Sr. informed John Gold of SPLT in early November 2015 that Howell Sr. had abandoned the Easement and Water Pipelines and that SPLT was free to do what it wanted with the entire system.  SPLT alleges that the Water Pipelines were out of operation at that time, and that the Easement and Water Pipelines remained abandoned for twenty-four (24) months.  It alleges that the Easement automatically terminated in 2016 or 2017.

SPLT also alleges that the Easement was granted in gross to Howell Sr. and Ms. Howell, and it claims that you do not have any rights under the Easement.  SPLT claims that it is unaware of any instrument conveying the rights contained in the Easement to you, and that it did not give permission to you to work on or utilize the Water Pipelines on the SPLT Property outside the Easement area.

SPLT alleges that you acquired the 4890 Property from Ms. Howell by Quit Claim Deed in 2018. It alleges that "around 2018 or thereafter," you allegedly undertook various construction-related activities on the SPLT Property.  These activities apparently continued from 2018 through August 2020, and possibly later.  SPLT alleges that this work, and other nearby work that included digging, caused damage to an active logging road, and left open a trench adjacent to the logging road.  SPLT alleges that you did not acquire any permits to conduct this work, and that this work created a hazard to people and property, including damaging the land itself.  It also alleges that you stockpiled unused pipe near a private logging road in at least two locations, and deposited construction debris and garbage at multiple locations in proximity to the Water Pipelines.  SPLT also alleges that you used motor vehicles and heavy equipment on and throughout the SPLT Property.

SPLT claims that it sent you a cease and desist letter on September 16, 2020, that described the trespass and demanded that you cease and desist the trespass and remove all materials, equipment and belongings from the area of trespass by September 23, 2020.  It alleges that you were in communication with SPLT through counsel to address the issues raised in the cease and desist letter, though no resolution was reached and the trespass continued until the time that the Lawsuit was filed.

SPLT filed the Lawsuit on or about December 3, 2020, though Homesite was not informed about the lawsuit until early August 2021.  The Lawsuit contains the following causes of action: (1) quiet title; (2) ejectment; (3) trespass; (4) waste; (5) nuisance; and (6) negligence.

## II.      The Homesite Policies

Homesite initially issued a homeowners insurance policy No. 3185622 to Howell Sr. and Ms. Howell for the policy period of February 25, 2012 through February 25, 2013.  This policy was renewed annually from February 25, 2013 through February 25, 2021.[1]  Each policy, collectively referred to herein as "the Policies," has a Personal Liability limit of $500,000.  The "Insured Location" listed in each of the Policies' Declarations is 4848 Mosquito Lake Road, Deming, Washington ("4848 Property").  It is described as a single family home and primary residence.

Homesite received a call from Ms. Howell on June 25, 2021, which was after the Lawsuit was filed, but before the Lawsuit had been tendered to Homesite.  During this call, Ms. Howell requested a change in the Insured Location for the 2021-2022 Policy to the 4890 Property.  Via letter dated June 29, 2021, Homesite issued revised declarations reflecting the change in the insured property effective as of June 25, 2021.  On July 6, 2021, Homesite received another call to amend the named insured from Howell Sr. to you.  Via letter dated July 10, 2021, Homesite issued a revised declaration updating the named insured to you effective July 7, 2021.

---

[1] As discussed below, Homesite is analyzing coverage under the policy in effective between February 25, 2020 to February 25, 2021 ("2020-2021 Policy") because that is the policy in effect at the time the Lawsuit was filed, as well as certain activities discussed in the Lawsuit.  Homesite acknowledges issuing a subsequent policy with policy period of February 25, 2021 to February 25, 2020 ("2021-2022 Policy"), though that policy was not effective until after the Lawsuit was filed.

The Policies contain an "Important Messages" form that contains the following language:

> We relied on the information you provided to underwrite and issue your insurance policy.  Making sure the information we have about you is correct and up-to-date will ensure your home is adequately protected.  Please review your "Declarations" page and check the description of your dwelling, occupancy, deductibles, coverages, and contracts and amendments.  If any of this information needs to be corrected, you must advise us within 30 days of receipt.
>
> You stated that:
>
> - you occupy the insured property and do not rent out to more than two (2) roomers/boarders
>
> -  no business with more than two (2) visitors per week is conducted on the premises**
>
> - no commercial or retail farming is conducted on the premises
>
> - you do not have a dog that has ever bitten a person

Based on information received by Homesite, it does not appear that Howell Sr. has occupied the 4848 Property for several years.  It is also unclear if you and/or Ms. Howell currently reside at the 4848 Property, or have resided at this property for the past several years, though Homesite acknowledges recent communication indicating that you and Ms. Howell currently occupy the 4890 Property.

The Policies contain Form HO 00 03 08 96, which provides liability coverage as follows:

**SECTION II – LIABILITY COVERAGES**

**COVERAGE E – PERSONAL LIABILITY**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for

damages resulting from the **occurrence** equals our limit of liability.

. . .

The Policies contain the following exclusions:

    **1.** **Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

        **a.** Which is expected or intended by one or more **insureds**;

        **b.** Arising out of or in connection with a **business** engaged in by an **insured**.  This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business**;

        . . .

        **e.** Arising out of a premises:

            (1) Owned by an **insured**;

            (2) Rented to an **insured**; or

            (3) Rented to others by an **insured**;

        That is not an **insured** location

        **f.** Arising out of:

            (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owner or operated by or rented or loaned to an **insured**

    . . .

The Policies contain the following definitions:

    **3.** **Business**[2] means:

---

[2] As amended by endorsement HH 01 46 06 15 (2020-2021 Policy).

    a. A trade, profession, occupation, or enterprise engaged in on a full-time, part-time or occasional basis;

    b. The lease of land, buildings, structures or personal property; or

    c. Any other activity engaged in for money, expectation of renumeration or monetary gain, or other compensation, financial or otherwise, except the following:

        (1) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity

        . . .

**5. Insured** means you and residents of your household who are:

    **a.** Your relatives; or

    **b.** Other persons under the age of 21 and in the care of any person named above.

        . . .

**6. Insured location** means:

    **a.** The **residence premises**;

    **b.** The part of other premises, other structures and grounds used by you as a residence; and

        **(1)** Which is shown in the Declarations; or

        **(2)** Which is acquired by you during the policy period for your use as a residence;

    **c.** Any premises used by you in connection with a premises described in **6.a.** or **6.b.** above;

    **d.** Any part of a premises:

        **(1)** Not owned by an insured; and

        **(2)** Where an insured is temporarily residing;

    **e.** Vacant land, other than farmland, owned by or rented to an insured;

. . .

**7. Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    **a. Bodily injury**; or

    **b. Property damage**.

**8. Property damage** means physical injury to, destruction of or loss of use of tangible property.

. . .

**11. Residence premises** means:

    **a.** The one-family dwelling, other structures, and grounds; or

    **b.** That part of any other building;

where you reside; and which is shown as the **residence premises** in the Declarations.

**Residence premises** also means a two family dwelling where you reside in at least one of the family units and which is shown as the **residence premises** in the Declarations.

The Policies contain the following conditions:

**SECTION II – CONDITIONS**

…

**3. Duties After Loss**

In case of an accident or **occurrence**, the **insured** will perform the following duties that apply. You will help us by seeing that these duties are performed:

    **a.** Give written notice to us or our agent as soon as is practical, which sets forth:

        **(1)** The identity of the policy and **insured**;

        **(2)** Reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

     **(3)** Names and addresses of any claimants and witnesses;

  **b.** Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

  **c.** At our request, help us:

     **(1)** To make settlement;

     **(2)** To enforce any right of contribution or indemnity against any person or organization who may be liable to an insured;

     **(3)** With the conduct of suits and attend hearings and trials; and

     **(4)** To secure and give evidence and obtain the attendance of witnesses;

  **d.** Under the coverage - Damage To Property Of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the **insured's** control;

  **e.** The **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **bodily injury**.

…

## SECTION I AND II – CONDITIONS

…

**2. Concealment or Fraud**

. . .

  **b.** Under Section **II** – Liability Coverages, we do not provide coverage to one or more **insureds** who, whether before or after a loss, have:

     **(1)** Intentionally concealed or misrepresented any material fact or circumstance; or

     **(2)** Engaged in fraudulent conduct;

Relating to this insurance.

. . .

**7. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

. . .

The Policies contain the following limited coverage for damage to property of others:

**3. Damage to Property of Others**

We will pay, at **replacement cost**, up to $500 per **occurrence** for **property damage** to property of others caused by an **insured**.

We will not pay for **property damage**:

**a.** To the extent of any amount recoverable under Section I of this policy;

**b.** Caused intentionally by an **insured** who is 13 years or older;

**c.** To property owned by an **insured**;

**d.** To property owned by or rented to a tenant of an **insured** or a resident in your household; or

**e**. Arising out of:

**(1)** A **business** engaged in by an **insured**;

**(2)** Any act or omission in connection with a premises owned, rented, or controlled by an **insured**, other than the **insured location**; or

**(3)** The ownership, maintenance, or use of aircraft, watercraft or motorvehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance which is designed and used exclusively for recreational purposes

off public roads, not subject to licensing requirements and not
owned by an insured.

. . .

### III.   <u>Coverage Discussion</u>

### A.   <u>Who is an "Insured"</u>

Liability coverage under the Policies is provided if a claim is made or a suit is brought against an
"insured" for damages because of property damage, subject to the Policies' terms, conditions, and
exclusions.  "Insured" is defined in part as "you" and residents of your household who are your
relatives.  "You" refers to the "named insured" shown in the Policy Declarations.

The "named insureds" in the Declarations for the 2020-2021 Policy were Howell Sr. and Ms.
Howell.  As mentioned above, the 2020-2021 Policy was the policy effective when the Lawsuit
was filed.  You were not listed as a named insured under the 2020-2021 Policy, and thus, there
may be no coverage for you.  However, Homesite recognizes that you may qualify as an insured
if you were a resident at the 4848 Property, and Ms. Howell continued to occupy that property.  To
the extent that you were not a resident and Ms. Howell did not occupy the 4848 Property during
the relevant time period, you would not qualify as an "insured," and Homesite would be unable to
provide coverage to you for the Lawsuit.  At this time, Homesite respectfully reserves its coverage
rights under the 2020-2021 Policy and all Policies that predate it on this basis.

As for the 2021-2022 Policy, Homesite does not believe that this policy applies as it was not
effective until months after the Lawsuit was filed, and thus, any alleged "occurrences" or "property
damage" would not have occurred during the 2021-2022 Policy period.  In addition, you were not
a named insured when the 2021-2022 Policy was issued.  While Ms. Howell requested to change
the "named insureds" on July 6, 2021, any change to the "named insured" was effective as of July
7, 2021, but not beforehand as there is no indication that this change to the 2021-2022 Policy was
retroactive to any time prior to this date.  Accordingly, it does not appear that any of the Policies
prior to the 2021-2022 policy were amended to add you as a "named insured."  Additionally, it is
unclear if you were a resident at the time of the events described in the Lawsuit or at the time that
the Lawsuit was filed.  As such, Homesite respectfully reserves its rights as to coverage for the
claims against you in the Lawsuit to the extent you do not qualify as an "insured" under any of the
Policies.

### B.   <u>Change of "Insured Location"</u>

The 2020-2021 Policy, and all Policies issued before it, list the 4848 Property as the "insured
location."  The Lawsuit does not appear, on its face, to implicate the 4848 Property.  As such,
Homesite would owe no coverage under the 2020-2021 Policy, and all Policies issued before it,
for the claims in the Lawsuit, which does not implicate, nor even mention, the 4848 Property.

As discussed above, Ms. Howell contacted Homesite on June 25, 2021, which was over six (6)
months after the Lawsuit had been filed, and prior to tender of the Lawsuit to Homesite, to change
the "insured location" from the 4848 Property to the 4890 Property on the 2021-2022 Policy.  This

change was effective as of June 25, 2021, and there is no indication that this change was retroactive. None of the claims or facts alleged in the Lawsuit, nor any alleged "occurrences" or "property damage," occurred after June 25, 2021. As such, there would be no coverage under the 2021-2022 Policy after the "insured location" was amended on June 25, 2021.

Moreover, Homesite was not informed of the Lawsuit by June 25, 2021. Had Homesite been informed of the Lawsuit at the time the request was made to change the "insured location," Homesite would not have issued an amended declarations page changing the address of the "insured location" to the 4890 Property for the 2021-2022 Policy. This is discussed in more detail below.

### C.      Occupation of "Insured Location"

The Policies contain an "Important Messages" indicating that Homesite understands that "you," *i.e.*, Howell Sr. and Ms. Howell, occupy the insured property, the 4848 Property. However, it appears that Howell Sr. and Ms. Howell may not have occupied the 4848 Property for several years. As such, Homesite respectfully reserves its coverage rights to the extent that the information provided to Homesite pertaining to the occupancy of the insured location by Howell Sr. and Ms. Howell was inaccurate and not corrected within 30 days.

### D.      "Occurrence"

The Policies provide coverage only for certain injuries and damages caused by an "occurrence," which is specifically defined by the Policies as "an accident." The Lawsuit contains allegations of intentional conduct, such as trespass and waste on the SPLT Property, as well as similar conduct of entering the SPLT Property after the cease and desist letter was sent. While Homesite acknowledges that the Lawsuit contains a cause of action for negligence, which could be construed as accidental conduct, it appears that the gravamen of the allegations are focused in part, if not entirely, on intentional conduct that occurred on the SPLT Property. Thus, to the extent that the Lawsuit contains allegations of intentional conduct, claims arising from such conduct would not fall under the coverage provided by the Policies. As such, Homesite respectfully reserves its coverage rights on this basis.

### E.      Damages Because of "Property Damage"

The Policies provide coverage for damages because of "bodily injury" or "property damage." The Lawsuit does not allege an "bodily injury," but Homesite acknowledges that the Lawsuit does allege "property damage" to the SPLT Property. That said, the Lawsuit also contains claims for injunctive and declaratory relief. Such claims are not for damages, and would not fall under the coverage provided by the Policies. As such, Homesite respectfully reserves its rights regarding coverage for all claims that do not request monetary relief solely as it relates to "property damage," as defined under the Policies quoted above.

### F.      Expected or Intended Injury Exclusion

The Policies preclude personal liability coverage for "property damage" that is expected or intended by the "insured." As discussed above in the "occurrence" section, the allegations in the

Lawsuit suggest that any "property damage" to the SPLT Property was intentional, *i.e.*, it was expected or intended, especially after the cease and desist letter. Thus, to the extent it is determined that any "property damage" alleged in the Lawsuit was expected or intended, Homesite respectfully reserves the right to limit or deny coverage based on the "Expected or Intended Injury" exclusion.

## G.     Owned Property Exclusion

The Policies exclude personal liability coverage for "property damage" arising out of a premises owned by an insured that is not an insured location. To the extent it is determined that the alleged "property damage" in this matter was to an "insured's" own property, or to property rented to an "insured," occupied by an "insured," used by an "insured," or in an "insured's" care, this exclusion may serve to limit or preclude coverage. Homesite respectively reserves its rights to limit or preclude coverage under this exclusion.

## H.     Business Activities Exclusion

The Policies exclude coverage for "property damage" arising out of or in connection with a "business" engaged in by an "insured." It is unclear from the allegations in the Lawsuit whether any alleged "property damage" arose out of or in connection with a "business" engaged in by an "insured" though the alleged presence of a small hydroelectric plant and allegation that water from the Water Pipelines is not used for domestic water raises the issue of whether the allegations in the Lawsuit arise out of "business" activities. As such, Homesite respectively reserves its coverage rights to the extent it is determined that any "property damage" alleged in the Lawsuit arose out of or in connection with a "business" engaged in by an "insured."

## I.     Motor Vehicles Exclusion

The Policies exclude coverage for "property damage" arising out of the use of motor vehicles. The Lawsuit alleges that you used "motor vehicles and heavy equipment on and throughout the [SPLT] Property." To the extent SPLT seeks damages for "property damage" arising out of the use of motor vehicles, Homesite respectfully reserves its right to limit or preclude coverage accordingly.

## J.     Punitive and Non-Monetary Damages

The Lawsuit seeks punitive damages (*i.e.*, treble damages). As a matter of public policy, Washington law disfavors insurance coverage for punitive damages. Moreover, the Policies provide coverage only for damages caused by "property damage" and not for enhanced damages awarded for exemplary or punitive reasons. Accordingly, Homesite respectfully reserves the right to limit or deny coverage for any punitive damages on the basis that that they fall outside the scope of the Policies' coverage.

## K.     Additional Coverage - Damage to Property of Others

The additional coverage provided under B. Damage to Property Others (up to $500 per "occurrence") excludes coverage for "property damage" caused intentionally by an "insured"; to property owned by an "insured"; to property owned by or rented to a tenant of an insured or a

resident in your household; arising out of a business engaged in by an insured, or any act or omission in connection with a premises owned, rented, or controlled by an insured (other than the insured location); or arising out of the ownership, maintenance, or use of motor vehicles or all other motorized land conveyances.  For the reasons discussed above, Homesite respectfully reserves the right to deny coverage to the extent any "property damage" was caused by or arose out of any of these scenarios.

## L.    Breach of the Policies' Conditions Regarding the Lawsuit

As noted above, the Policies contain certain conditions to coverage that may apply to this claim. Those include the following:

### a.   Concealment or Fraud

There is no coverage under the Policies for one or more "insureds" who, whether before or after a loss, have intentionally concealed or misrepresented any material fact or circumstance; or engaged in fraudulent conduct, relating to this insurance.  As noted above, there are numerous discrepancies, discussed above, regarding who occupied the "insured location" and when.

There are also discrepancies regarding the actual property being insured, whether it was the 4848 Property or the 4890 Property, as well as the fact that you and Ms. Howell did not notify Homesite of the pending Lawsuit in June 2021 when you and/or she requested an amendment to the 2021-2022 Policy to change the insured property.  The fact that a Lawsuit had been filed against you for actions taken regarding the 4890 Property at the time that request was made was a material fact that was concealed from Homesite at the time.  As such, Homesite respectfully reserves the right to deny coverage in the event it is established that you and/or Ms. Howell intentionally concealed the existence of the Lawsuit from Homesite at the time you had the 2021-2022 Policy amended to change the insured property from the 4848 Property to the 4890 Property.

### b.   Late Tender of Lawsuit

The Policies require that the insured take certain actions to provide timely notice to Homesite of a claim or potential claim.  In this regard, the Policies require that the insured provide written notice to Homesite or its agent as soon as is practical for an accident or occurrence.  The Policies specifically provide that the insured must promptly forward every notice, demand, summons or other process relating to the accident or occurrence.  This would include the Lawsuit at issue.

Based on the information available to Homesite, it appears that the Lawsuit was filed on December 3, 2020, and that you were served in January or February 2021.  Homesite did not receive notice of the Lawsuit until early July 2021, approximately six (6) months after you were served, and after you and/or Ms. Howell had contacted Homesite to amend the insured property on the 2020-2021 Policy as discussed above.  Not only were Homesite's coverage defenses prejudiced by the delayed notice of the Lawsuit, Homesite's ability to defend the Lawsuit was also prejudiced.  Moreover, the timing of the late notice—only after the 2021-2022 Policy had been amended regarding the insured property—raises serious concerns that the delayed tender of the Lawsuit was intentionally committed until after this change was made to the 2020-2021 Policy.

As such, Homesite respectfully reserves its rights regarding coverage for the Lawsuit based on the delayed tender of the Lawsuit that substantially prejudiced Homesite's rights in this matter.

## IV. <u>Homesite's Coverage Position</u>

Subject to the above coverage issues, as well as Homesite's general reservation to identify any additional coverage issues that may arise during the course of Homesite's ongoing coverage investigation, Homesite agrees to defend you in connection with the claims asserted against you in the Lawsuit under a full and complete reservation of rights. Homesite also agrees to refund reasonable defense fees and costs incurred prior to tender of the claim to us. Please provide copies of the legal bills that you seek reimbursement for and Homesite will respond accordingly.

Homesite has retained counsel to enter an appearance on your behalf and defend the claims against you in the Lawsuit. You may accept or reject Homesite's offer to defend. By accepting the offer to defend, you acknowledge that you have read and understand the above reservation of rights and that you understand that Homesite is offering to defend you, but is retaining the right to disclaim coverage and withdrawal from your defense at a later date if it is determined that there is no coverage under the Policies for any of the claims against you or if all covered claims are resolved or dismissed. In this regard, Homesite specifically reserves its rights to seek a judicial determination before any court of competent jurisdiction of the coverage issues identified in this letter, as well as any other coverage issues that may arise during the course of the Lawsuit.

This letter should not be construed as waiving any of Homesite's rights under the Policies or applicable law to limit and/or disclaim coverage. Homesite reserves the right to rely on any additional facts, policy provisions, or other relevant information that may affect coverage and/or alter its coverage position in the future. Homesite reserves the right to supplement or amend this reservation of rights correspondence as appropriate, and does not waive its right to disclaim coverage for any valid reason that may arise. Accordingly, Homesite reserves all of its rights regarding coverage for this claim under the terms and conditions of the Policies and applicable law.

Homesite appreciates your cooperation during its investigation. If, for any reason, you disagree with any of the contents of this letter or believe that any part of it is inaccurate or incomplete, please contact the undersigned immediately with your comments or questions. Further, if you believe we have omitted any relevant information or if you are aware of, or become aware of, any additional information that you believe may affect Homesite's coverage position, please contact me immediately. Homesite reserves its right to consider additional information and reassess its coverage position should the circumstances so warrant.

Please be advised that Washington law requires us to inform you that it is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

Sincerely,

*Andrea Cone*

Andrea Cone
Litigation Specialist
Homesite Insurance Co.
One Federal Street, Suite 400
Boston, MA 02110
Ph: 617.603.5184
Fax 866.694.8473
General Email:  claims@homesite.com
Email:  andrea.cone@homesite.com


cc:     Robin Howell
        Robert Howell, Sr.