UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOMESITE INSURANCE COMPANY OF THE MIDWEST, a Wisconsin corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>ROBERT HOWELL, JR., a single individual, ROBIN HOWELL, a single individual, and ROBERT HOWELL, SR., a single individual,<br><br>                    Defendants. | CASE NO. 2:21-cv-01389-JHC<br><br>ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT |

## I

### INTRODUCTION

This matter comes before the Court on the parties' cross-motions for partial summary judgment.  Dkt. ## 79, 84.  The Court has reviewed the submissions in support of and in opposition to the motions, the case file, and the applicable law.  Being fully advised, the Court DENIES Plaintiff's motion, and GRANTS in part and DENIES in part Defendants' motion.

## II

### BACKGROUND

This insurance coverage dispute arises out of a lawsuit filed by Sierra Pacific Land and Timber Company ("SPLT") against Robert Howell Jr. ("Howell Jr.") on December 3, 2020, in

Whatcom County Superior Court: *Sierra Pacific Land & Timber Co. v. Robert Howell Jr.*, Cause No. 20-2-01247-37 ("Underlying Lawsuit").  Dkt. # 1 at 23.  Plaintiff Homesite Insurance Company of the Midwest ("Homesite") is currently defending Howell Jr. in the Underlying Lawsuit under a reservation of rights but seeks a declaration from this Court that it no longer owes a duty to continue providing defense coverage or to provide indemnity coverage.  Dkt. # 48.  The Howells assert counterclaims against Homesite for declaratory judgment, breach of contract, insurance bad faith, and violations of the Washington Consumer Protection Act ("CPA") and Insurance Fair Conduct Act ("IFCA").  Dkt. # 76.

According to the complaint in the Underlying Lawsuit:

SPLT and the Howells own neighboring properties in and around Deming, Washington. Dkt. # 1 at 24.  Robert Howell, Sr. and Robin Howell purchased the Howell Property in 1976. *Id.*  Through a divorce decree, Robin Howell acquired the Howell property from Robert Howell, Sr. in 2014.  *Id.*  In 2018, Robert Howell, Jr. (the son of Robert Howell, Sr. and Robin Howell) acquired the Howell Property from his mother by quitclaim deed.  *Id.*  The Howell property has a small hydroelectric plant that draws water from natural streams on the SPLT property through a series of water intakes and pipelines.  *Id.* at 24–25.

SPLT's predecessor Georgia-Pacific Corporation granted a non-exclusive easement in gross to Robert Howell, Sr. and Robin Howell in 1978.  Dkt. # 1 at 25.  The easement permitted the Howells to lay pipe on the SPLT property to provide water to the Howell property for use at its small hydroelectric plant.  *Id.* at 25.  The terms of the easement dictated that it terminated automatically if the grantee failed to use it for a continuous period of 24 months.  Dkt. # 1 at 26. In 2015, Robert Howell Sr. informed SPLT that he wished to abandon the easement.  *Id.* Additionally, the easement and all pipelines remained abandoned for 24 months since that date, thereby automatically terminating by 2017.  *Id.*

ORDER ON CROSS-MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 2

In 2018 or later, Robert Howell Jr. began using and maintaining the water pipelines.  Dkt. # 1 at 26.  On September 16, 2020, SPLT sent Robert Howell Jr. a cease-and-desist letter.  *Id.* When no resolution was reached following the letter, SPLT filed the Underlying Lawsuit on December 3, 2020.  *Id.* at 23.  The Underlying Lawsuit lists the following "causes of action": (1) quiet title, (2) ejectment, (3) trespass, (4) waste, (5) nuisance, and (6) negligence.  *Id.* at 28–30. When SPLT filed the Underlying Lawsuit, Homesite had issued a homeowner's insurance policy to the Howells.  *See* Dkt. # 80–4.[1]  The named insureds are listed as Robert Howell and Robin Howell, and the insured location is listed as 4848 Mosquito Lake Road, Deming, Washington. *Id.* at 3.  The policy contains liability coverage, which—subject to exclusions—triggers when a "suit" is brought against an "insured," and applies to "property damage" caused by an "occurrence," when such "property damage" takes place during the policy period.  *Id.* at 20.  It states, in relevant part:

> **SECTION II – LIABILITY COVERAGES**
>
> **COVERAGE E – PERSONAL LIABILITY**
>
> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which the insured is legally liable.  Damages include prejudgment interest awarded against the insured; and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

*Id.*  The policy contains these exclusions:

---

[1] Homesite first issued a homeowner's insurance policy to the Howells in 2012 and the policy repeatedly renewed until the relevant time period.

1. Coverage E – Personal Liability and Coverage F – Medical Payments to others do not apply to bodily injury or property damage:

   a. Which is expected or intended by one or more insureds;

   b. Arising out of or in connection with a business engaged in by an insured . . .

. . .

   e. Arising out of a premises:

      (1) Owned by an insured;

      (2) Rented to an insured; or

      (3) Rented to others by an insured;

that is not an insured location;

   f. Arising out of:

      (1) The ownership, maintenance, use, loading or unloading or motor vehicles . . .

*Id.* at 21.  The policy contains these definitions:

   i. Insured means you and the residents of your household who are:

      a. Your relatives; or

      b. Other persons under the age of 21 and in the care of any person named above.

. . .

   ii. Insured location means:

      a. The residence premises;

      b. The part of other premises, other structures and grounds used by you as a residence; and

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

c.  Any premises used by you in connection with a premises described in 6.a. or 6.b. above;

d.  Any part of a premises

(1) Not owned by an insured; and

(2) Where an insured is temporarily residing;

e.  Vacant land, other farmland, owned by or rented to an insured; . . .

iii.  Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a.  Bodily injury; or

b.  Property damage.

iv.  Property damage means physical injury to, destruction of or loss of use of tangible property. . . .

11. Residence premises means:

a.  The one-family dwelling, other structures, and grounds; or

b.  That part of any other building;

Where you reside; and which is shown as the residence premises in the Declarations.

Residence premises also means a two family dwelling where you reside in at least one of the family units and which is shown as the residence premises in the Declarations.

*Id.* at 6–7.

On June 29, 2021, at Robin Howell's request, Homesite issued a revised policy declaration (effective June 25, 2021) changing the insured address under the policy to 4890 Mosquito Lake Road.  Dkt. # 81–4 at 2.  Around four days later, an attorney representing the Howells tendered the Underlying Lawsuit to Homesite.  Dkt. # 81–6.  On July 10, 2021, at Robin

Howell's request, Homesite issued a revised declaration (effective July 7, 2021) adding Robert Howell Jr. as a named insured.  Dkt. # 81–7.  On September 20, 2021, Homesite notified Robert Howell Jr. that it would provide defense coverage of the Underlying Lawsuit under a reservation of rights.  Dkt. # 1 at 87.  On October 12, 2021, Homesite filed the present lawsuit.  *See generally* Dkt. # 1.

Homesite requests a summary judgment ruling that: (1) there is no coverage for the Underlying Lawsuit under the 2021-2022 policy—or any earlier or later policies—because there was no "property damage" caused by an "occurrence," (2) Homesite owes no coverage for the Underlying Lawsuit because such suit seeks damages arising out of a property that is not an "insured location," (3) there is no coverage under the 2020-2021 policy or those preceding it because Howell Jr. is not an "insured," (4) there is no coverage for quiet title, ejectment, or trespass, and (5) there is no coverage for punitive damages.  Dkt. # 79 at 14–19.  The Howells request a summary judgment ruling that: (1) the Howells are entitled to a defense in the Underlying lawsuit, (2) Homesite breached its duty to defend the Underlying Lawsuit by waiting over two months after tender before providing a defense, (3) the Howells are entitled to recover defense costs they paid out of pocket to defend against these claims, and (4) certain causes of action filed by Homesite should be dismissed for lack of evidence.  Dkt. # 84 at 6.

### III

### DISCUSSION

A.  Summary Judgment Standard

Summary judgment is warranted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make an adequate showing on an essential element of a claim in the case on which the

nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).
There is no genuine issue of fact for trial when the record, taken as a whole, could not lead a
rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio
Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative
evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e).  Underlying facts are
viewed in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587.  When
cross motions are at issue, the court must "evaluate each motion separately, giving the
nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City
of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (internal citations omitted).

### B. Duty to Defend & Duty to Indemnify

Under Washington law, the duty to defend is broader than the duty to indemnify. *Woo v.
Fireman's Fund Ins.* Co., 161 Wash.2d 43, 52, 164 P.3d 454 (2007).  An insurance company has
the duty to indemnify if the insurance policy *actually* covers the insured, while the duty to
defend arises if the insurance policy *conceivably* covers the insured.  *Am. Best Food, Inc. v. Alea
London, Ltd.*, 168 Wash.2d 398, 404, 229 P.3d 693 (2010).  An insurer is relieved of the duty to
defend only if the policy clearly does not cover the claim.  *Truck Ins. Exch. v. VanPort Homes,
Inc.*, 147 Wash.2d 751, 760, 58 P.3d 276 (2002).  Courts interpreting an insurance policy will
give the language its plain meaning, construing the policy as would an "average" person
purchasing insurance.  *Woo*, 161 Wash.2d at 52.  An ambiguity in the policy is interpreted in
favor of the insured.  *Am. Best Food*, 168 Wash.2d at 411.  A clause in an insurance policy is
ambiguous if it is "fairly susceptible to two different interpretations, both of which are
reasonable."  *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash.2d 165, 171, 110 P.3d 733
(2005).

The duty to defend is generally determined from the "eight corners" of the insurance contract and the underlying complaint. *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wash.2d 793, 803, 329 P.3d 59 (2014) *as corrected* (Aug. 6, 2014). In determining whether there is a duty to defend, the question is whether "there is any reasonable interpretation of the facts or the law that could result in coverage." *Am. Best Food*, 168 Wash.2d at 405. An insurance company breaches its duty to defend in bad faith as a matter of law if it relies on an arguable legal interpretation of its own policy. *Id.* at 413. There are two exceptions to this rule, and both favor the insured. *Woo*, 161 Wash.2d at 53. First, if coverage is not clear from the face of the complaint but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt on the duty to defend. *Id.* Second, if the allegations in the complaint conflict with facts known to the insurer or if the allegations are ambiguous, facts outside the complaint may be considered. *Id.* at 54. But such extrinsic facts may be used only to trigger the duty to defend; the insurer may not rely on such facts to deny its duty to defend. *Id.*

### C. Homesite's Motion for Partial Summary Judgment

Homesite moves for a summary judgment ruling that it owes no coverage for the Underlying Lawsuit. Its arguments are based on several definitions and exclusions in the policy.

#### 1. Coverage could exist under the 2021–2022 policy.

Homesite argues that there can be no coverage under the 2021-2022 policy because the policy period begins on February 25, 2021, and SPLT filed the Underlying Lawsuit on December 3, 2020. Dkt. # 79 at 15. Its position is that the 2021–2022 policy could not possibly cover property damage that occurred before February 25, 2021. Homesite also argues that there can be no coverage for any property damage that occurred *after* February 25, 2021, because the 2021–2022 policy provides liability coverage for an "occurrence," *i.e.*, an accident that results in "property damage." *Id.* at 15 (citing Dkt. # 1 at 52, 65). By February 25, 2021, Howell Jr. had

already been sued in the Underlying Lawsuit and his attorney had filed a notice of appearance. Dkt. # 33–2.  Because Howell Jr. was on notice of the Underlying Lawsuit by the inception of the 2021–2022 policy, Homesite argues that any "property damage" that occurred thereafter could not have been accidental to qualify as an "occurrence" and moreover would be excluded under the "expected or intended injury" exclusion.  Dkt. # 79 at 15 (citing Dkt. # 1 at 66).  The Howells counter with two arguments: (1) Homesite is estopped from contesting its duties and obligations under any policy other than the 2020–2021 policy because its reservation of rights letter did not raise any defenses beyond the 2020–2021 policy, and (2) SPLT's claim that damages are continuing in nature implicates multiple policy years.  Dkt. # 86 at 24.

The Court agrees with Homesite that the 2021–2022 policy cannot cover property damage that occurred before its inception.  But it agrees with the Howells that the 2021-2022 policy could conceivably provide coverage for property damage that occurred during the policy period.  The Court acknowledges that the Underlying Lawsuit was filed on December 3, 2020, and therefore the complaint explicitly references only events that occurred before that date.  But several of the causes of action reference harm that is continuing in nature, thereby creating ambiguity as to whether the litigation would encompass alleged harm beyond that date.  *See, e.g.*, Dkt. # 1 at 28.  Further, it appears that SPLT and Howell Jr. are litigating alleged damages that occurred as recently as 2022.  For example, on May 10, 2022, SPLT filed a Motion for Preliminary Injunction (in the same underlying case number) alleging that a pressurized piping system failed in March 2022 and caused "property damage" to SPLT's property.  Dkt. # 85–3 at 5; *cf. Woo*, 161 Wash.2d at 54 (documents extrinsic to the underlying complaint be used only to trigger a duty to defend).  Further, the argument that any property damage occurring after February 9, 2021, would be excluded under the policy as "not accidental" or "expected or intended injury" strikes the Court as conclusory.  The conduct described in the underlying

complaint does not represent the complete universe of acts that could result in property damage; therefore, it is conceivable that Howell Jr. could have engaged in conduct after February 9, 2021, causing accidental, unexpected, or unintentional property damage despite his awareness of the Underlying Lawsuit.  It is also possible that Howell Jr.'s actions before February 9, 2021, could have caused continuing or later property damage after that date.  And lastly, the plain language of the "expected or intended injury" exclusion specifies that property damage, not the conduct by the insured, must be expected or intended.  *See* Dkt. # 80–4 at 21.  The Court therefore cannot conclude, as a matter of law, that Homesite does not owe a duty to defend under the 2021-2022 policy.[2]

> 2.   Homesite's arguments regarding the definition of the "insured location" fail.

Homesite's next argument is that it owes no coverage because the policy expressly excludes personal liability coverage for "property damage" arising out of a premises owned by an "insured" that is not an "insured location."  Dkt. # 79 at 15 (citing Dkt. # 1 at 66).  Homesite cites the fact that the insurance policy covers 4848 Mosquito Lake Road, not 4890 Mosquito Lake Road (the address listed in the Underlying Lawsuit).  *Id.* at 16 (citing Dkt. # 1 at 24).  The Howells respond that 4848 Mosquito Lake Road and 4890 Mosquito Lake Road are not two separate properties, but two structures on the same property.  Dkt. # 86 at 13.  Therefore, it

---

[2] The Court is unpersuaded by the Howells' estoppel argument.  Homesite's reservation of rights letter states:

> Homesite is analyzing coverage under the policy in effective [sic] between February 25, 2020 to February 25, 2021 ('2020-2021 Policy') because that is the policy in effect at the time the Lawsuit was filed, as well as certain activities discussed in the Lawsuit.
> Homesite acknowledges issuing a later policy with the policy period of February 2021 to February 25, 2020 [sic] ('2021-2022 Policy'), though that policy was not effective until after the Lawsuit was filed.

Dkt. # 1 at 89, n. 1.  The Court does not interpret this statement as a waiver of defenses.  On the contrary, Homesite appears to have asserted its position that the 2021-2022 policy does not apply to the Underlying Lawsuit.

would be an unreasonable interpretation of the policy to find that there is no coverage for the Underlying Lawsuit. *Id.*

Although the complaint in the Underlying Lawsuit defines the "Howell Property" as "4890 Mosquito Lake Road," it is ambiguous as to whether it implicates only the building with that address or the larger parcel of land on which it sits. For example, it lists the legal definition of the property as "That Portion of Government Lot 1, Section 2, Township 38 North, Range 5 Easy of W.M., Lying Easterly of Mosquito Lake Road. Situate [sic] in Whatcom County, Washington." Dkt. # 1 at 24. This legal description seems to encompass a lot or parcel of land rather than a singular structure. The complaint also defines the "Howell Property" as Parcel ID 84185, suggesting that it intends to implicate the entire parcel and not simply the building address of 4890 Mosquito Lake Road. *See* Dkt. # 1 at 24 (citing and incorporating the quitclaim deed transferring ownership of Parcel ID 84185 from Robin Howell to Robert Howell Jr., and referring to this parcel as "the Howell Property."). Given this ambiguity, the Court may look outside the eight corners to determine whether Homesite owes coverage under the policies. Upon doing so, it concludes that Howells have submitted sufficient documentation to establish a question of fact as to the "insured location." A search of Parcel ID No. 84185 in the Whatcom County Property Assessor's website yields images of three buildings (a main residence, a separate single room structure, and a mobile home that was apparently destroyed in 2020) suggesting that all three buildings are included on the same property. *See* Dkt. # 42 at 3–4. And the parties seem to dispute whether the address of the main residence is 4848 Mosquito Lake Road or 4890 Mosquito Lake Road. *See, e.g.*, Dkt. # 43 at 2. Further, when "4848 Mosquito Lake Road" (the address listed on the policy) is entered into the assessor's website, no results are displayed, indicating that 4848 Mosquito Lake Road is not its own separate property. Dkt. # 42 at 2. This accords with Robin Howell's explanation that the 4848 address corresponds to the

ORDER ON CROSS-MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 11

cabin on the property with a locking mailbox, built decades after the Howells acquired the

property, and that she requested the insurance policy be sent there so that her abusive ex-husband

could not access her mail.  Dkt. ## 26 at 2, 43 at 3.  Lastly, the policies define the "insured

location" as:

> 6.a The residence premises;
>
> b. The part of other premises, other structures and grounds used by
> you as a residence; and
>
> > (1) Which is shown in the declarations; or . . .
>
> c. Any premises used by you in connection with a premises
> described in 6.a or 6.b above . . .

Dkt. # 80–4 at 6.  Therefore, even if 4890 is not the address corresponding to the main residence,

it could still conceivably fall under provisions 6.b or 6.c of the policy if the property is an

undivided parcel.  In short, the Howells have submitted evidence that the property is a single

undivided parcel and that the "insured location" encompasses the main residence and the cabin,

despite there being two separate mailing addresses.  The Court therefore cannot conclude as a

matter of law that there is no coverage under the policy.

> 3.   Homesite's arguments regarding the definition of the "insured" individuals under
>      the 2020-2021 and preceding policies fail.

Next, Homesite argues that it does not owe coverage because Robert Howell Jr., the

defendant in the Underlying Lawsuit, is not an "insured" under the 2020-2021 or preceding

policies.  The policies provide liability coverage "[i]f a claim is made or a suit is brought against

an insured for damages . . ."  Dkt. # 80–4.  The policies defined "insured" in relevant part as

"you and residents of your household who are: a. Your relatives . . ."  *Id.* at 6.  The term "you" is

defined as "the 'named insured' in the Declarations and the spouse if a resident of the same

household."  *Id.*  Homesite argues that Robert Howell Jr. is not a named insured and that,

although he is a relative of Robin Howell and Robert Howell Sr., he was not a resident of the household during the relevant time.  Dkt. # 79 at 17.  The Howells respond that the named insured, "Robert Howell" (no suffix) could refer to Robert Howell Jr.  Dkt. # 86 at 16.   They also argue that there is a factual dispute over where the Howells resided during the various policy periods, and that Howell Jr. could therefore qualify as an "insured" under the policies even if he is not a "named insured."  *Id.* at 18–20.

Regarding whether Robert Howell Jr. is a named insured under the policy, the Court concludes that the policy's mention of "Robert Howell" (no suffix) is ambiguous as to whether it refers to Robert Howell Sr. or Robert Howell Jr.  Homesite has submitted screenshots of its underwriting file, showing that "Robert Howell's" date of birth was recorded as November 29, 1947.  Dkt. # 81–1 at 3.  Homesite also references Robin Howell's "belated attempt to add Howell Jr. to the 2021-2022 policy in June 2021" as evidence of her understanding that, at all relevant times before June 2021, the only named insureds were herself and Robert Howell Sr. Dkt. # 79 at 17.  The Court, however, is constrained in what evidence it may consider in support of Homesite's position.  Under Washington's "eight corners" doctrine, extrinsic facts may only be used to trigger the duty to defend; the insurer may not rely on such facts to deny a duty to defend.  *Woo*, 161 Wash.2d at 53.  Therefore, the Court may not use the extrinsic evidence cited by Homesite as evidence that it owes no duty to defend.[3]  Further, even if it could, the Howells

---

[3] In support of its position, Homesite cites *Hartford Fire Ins. Co. v. Leahy,* 774 F. Supp. 2d 1104 (W.D. Wash. 2011).  There, the court considered extrinsic evidence in support of an insurer's argument that a potential insured was not an insured.  *Id.* at 1111.  But *Woo* unequivocally holds that "[t]he insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty."  161 Wash.2d at 54.  Further, the *Hartford* court was presented with meaningfully different facts.  There, the underlying complaint's allegation that an individual was the agent of a company (and therefore an insured under the company's insurance policy) was contradicted by unequivocal sworn testimony of the individual in question that he was not, in fact, employed by the company.  *Id.* at 1111.  By contrast, here, the underlying complaint is not the only document that the Howells rely on to establish that Robert Howell Jr. is an insured; they submit multiple pieces of evidence creating a genuine issue of material fact as to that question.

have submitted evidence that Robin Howell and Robert Howell Jr. were members of the same household during several policy periods, creating a question of fact as to whether Robert Howell Jr.—even if not a "named insured"—is still an "insured" under the policy.  For example, statements by Robin Howell and Robert Howell Jr. in answers to interrogatories establish that they lived together at the main residence (what the Howells claim is 4890 Mosquito Lake Road) from Robert Jr.'s birth until 2005, at which point Robert Jr. moved into the cabin (what the Howells claim is 4848 Mosquito Lake Road).  Dkt. ## 87–1 at 4, 87–2 at 4.  Robert Jr. moved out of the cabin in 2005 due to a fire but moved back in 2009.  Dkt. # 87–2 at 4.  Robin Howell has lived in the main residence since at least 2014.  Dkt. # 87–1 at 4.[4]  The term "household" does not appear to be defined by the policy but could conceivably be interpreted to mean "residing on the same property."  *See generally State Farm Mut. Auto. Ins. Co. v. Ruiz*, 134 Wash. 2d 713, 952 P.2d 157 (1998) (terms must be liberally construed in favor of coverage). And, as explained above, there is at the very least a question of fact as to whether the 4848 and 4890 addresses are part of the same undivided property.  *See supra* Section III.C.2.  Robert Howell Jr. is undisputedly a relative of Robin Howell.  Therefore, the Court cannot conclude as a matter of law that Robert Howell Jr. is not an insured under the policy.  *See* Dkt. # 80–4 at 6–7 ("i. Insured means you and the residents of your household who are: a. Your relatives . . .").

---

[4] Homesite relies on bills, invoices, and other mail produced by the Howells in discovery to support its argument that the Howells did not live in the same household during the policy periods.  Dkt. # 79 at 12.  But again, these documents constitute extrinsic evidence and can therefore not be used by Homesite to defeat its duty to defend.  Further, even if they could, the Howells have submitted evidence to the contrary establishing residence on the property during the policy years, and an explanation that the Howells' mailing addresses and residential addresses differed at various points during this time.  *See* Dkt. ## 87–1 at 4, 87–2 at 4, 86 at 19–20.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

    4.   Homesite's arguments that there is no coverage for Quiet Title, Ejectment or Trespass fail.

Homesite argues that there is no coverage for the underlying claims of quiet title or ejectment because "[t][hese claims do not seek monetary damages," and liability policies only cover monetary damages. Dkt. # 79 at 18.  It also argues that the policies do not cover the underlying claim of trespass because, under RCW 4.24.630, a person may be held liable for trespass if he or she "goes onto the land of another and . . . wrongfully injures personal property or improvements to real estate on the land," and the term "wrongfully" means that the person "intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act." *Id.*

First, although quiet title and ejectment are incorrectly pleaded in the Underlying Lawsuit as separate "causes of action," they are more properly defined as *remedies*.[5]  *See, e.g.*, *Proctor v. Huntington,* 169 Wash.2d 491, 495, 238 P.3d 1117 (2010).  And Homesite may not parse these remedies from the legal theories of waste, nuisance, negligence, and trespass, which also seek damages and to which there are no clear policy exclusions.[6]  The Court acknowledges that Homesite cannot indemnify injunctive relief, but it also notes that if SPLT prevails in the Underlying Lawsuit, Robert Howell Jr. may be ordered to reimburse the costs of enforcing this injunctive relief (such as the cost of removing the water pipelines), which Homesite may need to indemnify.  *See* Dkt. # 1 at 28–29.  Because the Court has denied Homesite's motion for summary judgment as to its duty to defend in general, it cannot find at this stage in the litigation

---

[5] Robert Howell Jr. cannot be held liable for "quiet title" or "ejectment."  These are not independent legal theories.  Instead, if SPLT successfully proves the elements of waste, nuisance, negligence, or trespass, the Whatcom County Superior Court might determine that Robert Howell Jr.'s title must be quieted or that he, his property, and the water pipelines must be ejected from the land. Indeed, SPLT includes these remedies in its "prayer for relief" section at the end of its complaint.  Dkt. # 1 at 30.

[6] *See infra* re: trespass.

ORDER ON CROSS-MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 15

that there is no duty to indemnify.  If Homesite wishes to litigate its duty to indemnify, it may do so after the Underlying Lawsuit has concluded.  *See Mut. Of Enumclaw Ins. Co. v. USF Ins. Co.,* 164 Wash.2d 411, 421, 191 P.3d 866 (2008) ("the duty to indemnify arises when an insured is actually liable to a claimant and that claimant's injury is covered by the language of the policy." (internal citations omitted)).

With respect to its trespass argument, Homesite characterizes trespass as an "intentional tort," and thus not covered; but the complaint does not appear to specify a claim of intentional trespass.  Dkt. ## 79, 88 at 2; *See Grundy v. Brack Fam. Tr.,* 151 Wash.App. 557, 566, 213 P.3d 619 (2009) ("A plaintiff may bring two tort trespass actions against an alleged intruder onto property, intentional trespass or negligent trespass.").  SPLT does cite RCW 4.24.630 (a damages statute that refers to intentional acts) but it is in a section titled, "VII. FOURTH CAUSE OF ACTION—WASTE."  Dkt. # 1 at 28–29.  It is therefore conceivable that SPLT intends to seek damages under RCW 4.24.630 as to its waste claim only, and that its trespass claim is one for negligent trespass. *Cf. Gunn v. Riely*, 185 Wash. App. 517, 519, 344 P.3d 1225 (2015) (referring to RCW 4.24.630 as "the waste statute").  Further, even if SPLT had clearly pleaded intentional trespass in the Underlying Lawsuit, Homesite has not pointed to a policy exclusion for "intentional torts." *See generally* Dkt. ## 79, 88.  For these reasons, the Court cannot conclude, as a matter of law, that SPLT's claim for trespass is not covered by the policy.

5.   Homesite's argument that there is no coverage for punitive damages fails.

Homesite next argues that the policies do not cover "enhanced damages awarded for exemplary or punitive reasons" and emphasizes that Washington courts have consistently disapproved of punitive damages as contrary to public policy.  Dkt. # 79 at 18–19.  Similar to quiet title and ejectment, punitive damages are a remedy that cannot be parsed from the underlying causes of action of waste, nuisance, negligence, and trespass at this stage of the

litigation.  If Homesite wishes to litigate its duty to indemnify, it may do so after the Underlying Lawsuit has concluded.  *See Mut. Of Enumclaw Ins. Co.,* 164 Wash.2d at 421.  Arguments regarding the appropriateness of punitive damages should be made in the Underlying Lawsuit.

For these reasons, the Court DENIES Homesite's Motion for Partial Summary Judgment.[7]

D.  The Howells' Motion for Partial Summary Judgment

The Howells move for a summary judgment ruling that Homesite owes a duty to defend the Underlying Lawsuit, that Homesite breached this duty by waiting over two months before providing a defense and that the Howells are therefore entitled to recover out-of-pocket defense costs, and that some of Homesite's causes of action should be dismissed.  Dkt. # 84 at 6.  The Howells' first and last argument are intertwined because the Court must examine all of Homesite's arguments regarding policy definitions and exclusions to determine whether there is a duty to defend.  If it determines that there is a duty to defend as a matter of law, the Howells' last arguments (regarding dismissal of Homesite's claims for declaratory judgment) are rendered moot.

1.      Homesite owes a duty to defend the Underlying Lawsuit.[8]

Whether a lawsuit triggers a duty to defend is a question of law.  *See United Servs. Auto. Ass'n. v. Speed,* 179 Wash.App. 184, 194, 317 P.3d 532 (2014).  The insurer's duty to defend is

---

[7] In their response, the Howells move to strike portions of Hughes's and Stewart's declaration as inadmissible hearsay.  Dkt. # 86 at 26–28.  The Court did not rely on these portions of the declarations in reaching its conclusions.  Thus, the Court need not address the Howells' request.

[8] Homesite argues that if the Court does not intend to deny the Howells' motion, it should stay the motion so that Homesite may conduct additional discovery.  Dkt. # 94 at 3.  But under the eight corners doctrine, the Court would not be permitted to examine any extrinsic evidence to determine that there is no duty to defend, so additional discovery would not help Homesite support its arguments for declaratory relief.  *See Am. Best Food*, 168 Wash.2d at 405.  Because the Court can determine from the current record that a "reasonable interpretation of the facts or the law . . . could result in coverage," it need not stay the motion.  *Id.*  But as explained below, it does stay the portion of the Howells' motion that seeks dismissal of Homesite's fraud/concealment and late tender claims.

triggered if a complaint is ambiguous.  *Woo,* 161 Wash.2d at 64 (*citing Truck Ins. Exch.,* 147 at 760).  The insured must be given the benefit of the doubt if it is unclear *from the face of the complaint* that the policy does not provide coverage.  *Id.* (emphasis in original).  "In short, if it is not clear that the complaint does *not* contain allegations that are not covered by the policy, the insurer has a duty to defend."  *Id.*

The Court has already concluded that the underlying complaint and insurance policy are at the very least ambiguous as to the insured individuals and insured location, *see supra* Sections III.C.2–3, that coverage could exist under the 2021-2022 policy,[9] *see supra* Section III.C.1, that Homesite's arguments regarding claims for injunctive relief and trespass fail, *see supra* Section III.C.4, and that Homesite's arguments punitive damages fail, *see supra* Section III.C.5.  It must now determine whether coverage is *clearly not owed* based on any other policy definitions or exclusions.  If there is any ambiguity as to whether coverage is owed, the Court must find a duty to defend.  *Woo,* 161 Wash.2d at 64.

        a.   There is ambiguity as to whether the Howells occupied the property during the policy periods.

Homesite says that it owes no coverage because, upon information and belief, "Howell Sr. and/or Ms. Howell do not occupy the 4848 Property, and have not occupied this property for the past several years."  Dkt. # 48 at 15.  It is unclear from the face of the underlying complaint that Howell Sr. and/or Ms. Howell do not occupy the 4848 property.  *See* Dkt. # 1 at 23.[10] Further, the Howells have presented evidence that Robin Howell does indeed occupy the

---

[9] Homesite could also owe coverage under later policies based on the same logic of continuing harm.

[10] And, as explained above, there is ambiguity as to whether Robert Howell Jr. is an insured under the policy, which renders whether Robert Howell Sr. occupied the property potentially irrelevant or at the very least not dispositive.

property covered by the policy.  *See* Dkt. # 87–1.  The Court therefore cannot conclude that there is no coverage on this basis.  *See also supra,* Section III.C.3.

> b.  There is ambiguity as to whether the acts giving rise to the Underlying Lawsuit qualify as "occurrences" under the policy.

Homesite alleges that it owes no coverage for intentional conduct "such as trespass and waste on the SPLT Property, as well as similar conduct of entering the SPLT Property after the cease and desist letter was issued."  Dkt. # 48 at 16.  As explained above, the underlying complaint does not clarify whether SPLT alleges intentional or negligent trespass.  *See supra* Section II.C.4.  It is also unclear from the underlying complaint whether SPLT's waste allegations cover intentional conduct.  *See* Dkt. # 1 at 29 (alleging that Robert Howell Jr. "removed valuable property from the land . . ." and citing RCW 4.24.630, a damages statute that covers more conduct than simply intentional conduct).[11]  The Court therefore cannot conclude that there is no coverage on this basis.

> c.  There is ambiguity as to whether any property damage alleged in the Underlying Lawsuit was expected or intended by Robert Howell Jr.

Homesite says that "there is no coverage under the 2020-2021 Policy because any 'property damage' alleged in the Underlying Lawsuit was expected or intended by Howell Jr.," especially after the cease-and-desist letter.  Dkt. # 48 at 17.  The underlying complaint does not specifically allege intentional or expected property damage.  Dkt. # 1 at 23.  Further, for the reasons discussed in Section III.C.1, even property damage that occurred after the cease-and-desist letter and/or filing of the underlying complaint could conceivably have been accidental,

---

[11]  The word "wrongfully" in the damages statute (defined as requiring an intentional act) does not modify the complete statute, therefore making it theoretically possible to violate the statute without engaging in intentional conduct.  *See* RCW 4.24.630 ("Every person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land . . .").

1   unexpected, or unintended.  The Court therefore cannot conclude that there is no coverage on

2   this basis.

3             d.   The underlying complaint does not allege any facts that would fall under the
                    "owned property" exclusion.

4           Homesite says that, "[u]nder information and belief, some of the alleged 'property

5   damage' in this matter was to an 'insured's' own property, or to property rented to an 'insured,'

6   occupied by an 'insured,' used by an 'insured,' or in an 'insured's' care."  Dkt. # 48 at 17–18.

7   The underlying complaint does not describe any property damage to Robert Howell Jr.'s own

8   property.  *See* Dkt. # 1 at 23.  The Court therefore cannot conclude that there is no coverage on

9   this basis.

10            e.   The underlying complaint does not allege any facts that would fall under the
                    "business activities" exclusion.

11

12          Homesite states that "[t]he alleged presence of a small hydroelectric plant and allegation

13  that water from the Water Pipelines is not used for domestic water suggests that the allegations in

14  the Underlying Lawsuit arise out of 'business' activities."  Dkt. # 48 at 18.  Although the

15  underlying complaint states that the water pipelines are "not used to provide domestic water to

16  the Howell Property," Dkt. # 1 at 25, this allegation does not necessarily imply that the plant is

17  used as part of a business enterprise.  Therefore, the Court cannot conclude that there is no

18  coverage on this basis.

19            f.   There is ambiguity as to whether any property damage in the underlying
                    lawsuit falls under the "motor vehicles" exclusion.

20

21          Homesite says that there is no coverage for any property damage arising out of the use of

22  motor vehicles, and that the Underlying Lawsuit alleges that Howell Jr. used "motor vehicles and

23  heavy equipment on and throughout the [SPLT] Property," Dkt. ## 1 at 27, 48 at 18.  But the

24  underlying complaint does not specify what property damage—if any—was caused by these

ORDER ON CROSS-MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 20

motor vehicles and heavy equipment.  Given the vagueness of this allegation (in particular, that the complaint does not allege that all property damage arose from the use of motor vehicles, or whether the motor vehicle allegation attaches to any particular cause of action), the Court cannot determine that Homesite has no duty to defend any particular claims.  If the Whatcom County Superior Court concludes that Robert Howell Jr. is liable for the cost of property damage specifically arising out of his use of motor vehicles, Homesite may argue that it does not need to indemnify those costs.  But at this stage of the litigation, the Court cannot conclude that there is no coverage on this basis.

> g.   The Court must construe the policy in favor of the insured.

The Court has examined the underlying complaint and the insurance policies at issue.  It has determined that the underlying lawsuit is not clearly excluded from coverage based on the policies' loss provisions or exclusions.  Because an insurer's duty to defend is triggered if a complaint is ambiguous, and the insured must be given the benefit of the doubt when the policy does not clearly exclude coverage, the Court concludes that there is a duty to defend the Underlying Lawsuit. *See Am. Best Food*, 168 Wash.2d at 405; *Woo,* 161 Wash.2d at 64.

> 2.    The Court defers ruling on whether the Howells intentionally concealed or
> misrepresented material facts, and whether Homesite was prejudiced by an
> untimely tender.

Besides alleging that it does not owe coverage because the Underlying Lawsuit is not covered by the plain language of the policies, Homesite also argues that it does not owe coverage because the Howells concealed material information from Homesite and took fraudulent action to later alter coverage under the Policies after the Underlying Lawsuit was filed.  Dkt. # 48 at 19. It says that this conduct included concealment and/or fraudulent conduct regarding: (a) who occupied the "insured location" and when; (b) the actual property being insured, whether it was the 4848 Property or the 4890 Property; and (c) Lack of notification to Homesite of the pending

1    Underlying Lawsuit in June 2021 when amendments to the 2021-2022 Policy were made.  *Id.*  It

2    also alleges that the Howells did not promptly notify it of the Underlying Lawsuit and that it was

3    prejudiced as a result of the late tender.  *Id.* at 20.  The Howells move for summary judgment on

4    these causes of action, arguing that the Court should dismiss them for lack of evidence.  Dkt. #

5    84 at 24–26.

6           The Court cannot conclude as a matter of law, at this stage of the litigation, whether the

7    Howells concealed or misrepresented material facts or whether late tender of the Underlying

8    Lawsuit prejudiced Homesite.  These causes of action cannot be resolved simply by analyzing

9    the insurance policy and the underlying complaint; by their nature, they require examination of

10   extrinsic evidence.  Because discovery has not yet closed, the Court defers ruling on these issues

11   under Fed. R. Civ. P. 56(d).  The Howells may later renew their request.

12           3.      The Parties are Ordered to Meet and Confer Regarding Pre-Tender Costs

13           The Howells argue that Homesite has breached its duty to defend because it did not

14   appoint defense counsel until two and a half months after the Underlying Lawsuit was tendered.

15   Dkt. # 84 at 11.  They contend that they are entitled to their pre-tender defense costs.  *Id.* at 12.

16   Homesite appears to have agreed to reimburse pre-tender defense fees but represents in its

17   response that the Howells have not provided supporting invoices.  Dkt. # 94 at 3.  Having

18   concluded that Homesite owes a duty to defend the Underlying Lawsuit, the Court orders the

19   parties to meet and confer regarding the pre-tender defense fees owed to the Howells.  If the

20   parties cannot come to a resolution on this cause of action, the Howells may seek relief from the

21   Court.

22

23

24

ORDER ON CROSS-MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# IV

## CONCLUSION

For the reasons stated above, the Court DENIES Homesite's Motion for Partial Summary Judgment and GRANTS the Howells' Motion for Partial Summary Judgment to the extent that it seeks a determination that Homesite owes a duty to defend the Underlying Lawsuit.  The Court defers ruling on the questions of whether the Howells fraudulently concealed or misrepresented material facts, and whether late tender prejudiced Homesite, under Fed. R. Civ. P. 56(d).  The Court ORDERS the parties to meet and confer regarding pre-tender defense costs, and for the Howells to file another motion with this Court if a resolution is not reached.

Dated this 29th day of December, 2023.

John H. Chun
United States District Judge