UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOMESITE INSURANCE COMPANY OF THE MIDWEST, a Wisconsin corporation,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT HOWELL, JR., a single individual, ROBIN HOWELL, a single individual,<br><br>Defendants. | CASE NO. 2:21-cv-01389-JHC<br><br>ORDER |

# I

### INTRODUCTION

This matter comes before the Court on Homesite Insurance Company of the Midwest's Motion for Partial Summary Judgment on Extra-Contractual Counterclaims. Dkt. # 133. The Court has reviewed the materials filed in support of, and in opposition to, the motion; the rest of the file; and the governing law. For the reasons discussed below, the Court GRANTS the motion in part and DENIES it in part.

///
///

ORDER - 1

## II

### BACKGROUND

This section briefly summarizes the background of this matter.

Homesite brought this coverage suit against their insureds, the Howells, in connection with a state court lawsuit (Underlying Lawsuit) brought by Sierra Pacific Land & Timber Company (SPLT) against Robert Howell, Jr. *See* Dkt. # 48 at 12–20. Homesite is defending Robert Howell Jr. in the Underlying Lawsuit under a reservation of rights. In the Amended Complaint, Homesite sought a declaratory judgment that it no longer owes a duty to continue providing defense coverage or to provide indemnity coverage under the insurance policy. Dkt. # 48. The Howells assert counterclaims against Homesite for breach of contract, bad faith, and violations of the Washington Consumer Protection Act (CPA) and the Insurance Fair Conduct Act (IFCA). Dkt. # 76. In a prior Order, the Court denied Homesite's motion for summary judgment regarding whether the policy covers the Underlying Lawsuit. Dkt. # 113 at 8. The Court granted in part the Howells' motion for summary judgment, determining that Homesite has a duty to defend the Howells in the Underlying Lawsuit. *Id.* at 21. The Court deferred ruling on the issues of misrepresentation, omission, and fraud. *Id.*

The Howells later moved for partial summary judgment regarding pretender defense costs, prejudgment interest, and attorney fees. Dkt. # 114. The Court granted the motion as to the pretender defense costs and denied the motion as to prejudgment interest. Dkt. # 128 at 6–8. The Court deferred on attorney fees. *Id.* at 8–9.

At the close of discovery, both parties moved for partial summary judgment. Dkt. ## 133 (Homesite), 136 (Howells). The Howells moved for partial summary judgment on Homesite's claim that there is no coverage under the 2021-2022 insurance policy because of

ORDER - 2

misrepresentation, concealment, and fraud, and moved for attorney fees on the issue of the duty to defend. Dkt. # 136. The Court denied the motion as to misrepresentation, concealment, and fraud, and granted the motion as to attorney fees. Dkt. # 149. Homesite now seeks summary judgment on the Howells' bad faith, CPA, and IFCA claims. Dkt. # 133.

### III
#### DISCUSSION

A.  Summary Judgment Standards

Summary judgment is warranted if the movant shows that there is no genuine dispute of any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make an adequate showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); Fed. R. Civ. P. 56(e). Underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587.

B.  Bad Faith

Courts analyze a claim for bad-faith handling of an insurance claim under the tort principles of duty, breach, and damages. *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr. Co.*, 161 Wash. 2d 903, 915–16, 169 P.3d 1, 8 (2007). Insurers "have a duty to act in good faith and to deal fairly with their insureds." *Traulsen v. Cont'l Divide Ins. Co.*, 31 Wash. App. 2d 1056, 2024 WL 3327023, at *19 (2024); *see also St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165

ORDER - 3

Wash. 2d 122, 129, 196 P.3d 664, 667 (2008) ("The good faith duty between an insurer and an insured arises from a source akin to a fiduciary duty."). "An insurer defending its insured under a reservation of rights has 'an enhanced obligation of fairness toward its insured' because of the '[p]otential conflicts between the interests of insurer and insured, inherent in a reservation of rights defense.'" *Dan Paulson Const.*, Inc., 161 Wash. 2d at 915, 169 P.3d at 8 (quoting *Tank v. State Farm Fire & Cas. Co.,* 105 Wash. 2d 381, 383, 715 P.2d 1133, 1135 (1986)). To fulfill this enhanced obligation, the insurer must:

> (1) "thoroughly investigate" the claim against the insured, (2) "retain competent defense counsel for the insured," (3) fully inform the insured of "*all* developments relevant to [their] policy coverage and the progress of [their] lawsuit," and (4) "refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk."

*Id.* (quoting *Tank*, 105 Wash. 2d at 388, 715 P.2d at 1137).

To establish bad faith, the insured must "show the breach was unreasonable, frivolous, or unfounded." *Kirk v. Mt. Airy Ins. Co.*, 134 Wash. 2d 558, 560, 951 P.2d 1124, 1126 (1998). Context is critical to determining whether an insurer committed bad faith. *See Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wash. App. 686, 701, 17 P.3d 1229, 1236 (2001). Generally, bad faith is a question of fact for the jury, but a court can resolve the question as a matter of law if reasonable minds could not differ on the issue. *Smith v. Safeco Ins. Co.*, 150 Wash. 2d 478, 484, 78 P.3d 1274, 1277 (2003). "If the insurer can point to a reasonable basis for its action, this reasonable basis is significant evidence that it did not act in bad faith and may even establish that reasonable minds could not differ." *Id.* at 486, 78 P.3d at 1278. An insurer's decision to defend the insured under a reservation of rights and file a declaratory judgment action "does not immunize an insurer's bad faith conduct." *Dan Paulson Const., Inc.*, 161 Wash. 2d at 919, 169 P.3d at 10; *see also Onvia, Inc.*, 165 Wash. 2d at 132, 196 P.3d at 669 ("[W]e have consistently

ORDER - 4

recognized that the duty of good faith is broad and all-encompassing, and is not limited to an insurer's duty to pay, settle, or defend.").

The Howells say that Homesite acted in bad faith in four ways. Dkt. # 139 at 14. First, they say that Homesite unreasonably delayed accepting tender of the case. *Id.* at 14–15. Second, they say that Homesite's September 2021 reservation of rights letter did not provide an adequate explanation, and instead provided a "laundry list" of exclusions. *Id.* at 15. Third, they say that Homesite's refusal to defend under the 2021-2022, 2022-2023, and 2023-2024 policies was unreasonable, frivolous, and unfounded because the insurer did not adequately analyze or explain why it accepted tender only under the 2020-2021 policy. *Id.* at 17. Fourth, they say that during a mediation on October 30, 2023, Homesite's representative improperly interjected coverage issues into the settlement discussions. *Id.* at 19.

Homesite says that, as a matter of law, it complied with its duty to defend—emphasizing that it defended under a reservation of rights—and "promptly agree[d] to defend under the 2021-2024 Policies following the Court's ruling that it 'could' owe coverage under those policies." Dkt. # 133 at 9.

1. Delayed acceptance of tender

The Howells say that Homesite acted in bad faith by waiting 81 days after the defense was tendered to appoint counsel. Dkt. # 139 at 14. The Howells tendered the Underlying Lawsuit to Homesite on July 2, 2021. Dkt. # 93 at 1. Homesite responded to the tender with its first reservation of rights letter on September 20, 2021.[1] Dkt. # 1 at 87. The Howells paid out of

---

[1] The letter is erroneously dated September 20, 2020; the parties agree that the letter was sent on September 20, *2021*. *See* Dkt. ## 1 at 13, 139 at 4.

ORDER - 5

pocket for their own attorney to represent them during this period.  The Court ordered Homesite to reimburse the Howells for these attorney fees in an earlier order.  Dkt. # 128.

Washington courts have recognized that a delay in acceptance of tender can constitute bad faith.  *See Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co.*, 150 Wash. App. 1, 9, 206 P.3d 1255, 1260 (2009) (determining that a delay of 14 months was bad faith); *see also Safeco Ins. Co. of Am. v. Butler*, 118 Wash. 2d 383, 395, 823 P.2d 499, 506 (1992) (determining that there was a genuine issue of material fact as to whether a two-month delay in informing the insured of the reservation of rights was bad faith).  Homesite fails to explain the delay in tender; it merely points out that it reimbursed the Howells and later appointed an attorney.  Dkt. # 143 at 3–4.  Because Homesite has not offered an explanation, viewing the facts in the light most favorable to the Howells, the Court cannot determine, as a matter of law, that the delay of 81 days was not bad faith.

       2.       September 2021 reservation of rights letter

In its September 20, 2021, reservation of rights letter, Homesite laid out its coverage positions.  Dkt. # 1 at 89.  The Howells say that this letter provided only a "laundry list" of exclusions without proper analysis.  Dkt. # 139 at 15.  The Howells rely on *Webb v. USAA Cas. Ins. Co.*, 12 Wash. App. 2d 433, 459–63, 457 P.3d 1258, 1272–74 (2020).  But that case is distinguishable.

In *Webb*, the court determined that an insurer breached its duty to defend and engaged in bad faith when it analyzed the claim in terms of "asking whether there was any conceivable way that its policy did *not* provide coverage." *Id.* at 463, 457 P.3d at 1274 (emphasis in original).  The insurer denied coverage.  *Id.* at 459, 457 P.3d at 1272.  The court held that, in analyzing whether the insurer has a duty to defend, the insurer "must ask if there is any conceivable way

ORDER - 6

that one or more of the claims asserted in the lawsuit is covered under the applicable policy." *Id.* at 463, 457 P.3d at 1274. Here, Homesite did not deny coverage under the 2020-2021 policy, so the standards laid out in *Webb* are inapt here.

In a reservation of rights letter, the insurer must describe the specific bases for the reservations. *Specialty Surplus Ins. Co. v. Second Chance, Inc.*, 412 F. Supp. 2d 1152, 1167 (W.D. Wash. 2006) (citing *Weber v. Biddle*, 4 Wash. App. 519, 525, 483 P.2d 155, 159 (1971)) ("Under *Weber*, Specialty Surplus's reservation of 'all defenses,' without more, is legally insufficient as a reservation of the scope-of-employment defense. *Weber* and *Tank* make clear that insurers are obliged to keep their insureds informed as to the policy defenses upon which the insurer intends to rely."). But "no specific format or procedure is required for notifying the insured that their insurer is asserting a reservation of rights." § 28:12. Reservation of rights, 35 Wa. Prac., Washington Insurance Law and Litigation § 28:12 (2024-2025 ed.).

The Howells attack the merits of many of Homesite's reservations. They say that "Homesite offered arguments, unsupported by fact, that the policy did not provide coverage." Dkt. # 139 at 16. First, the Howells say that Homesite "re-defined" SPLT's trespass claim as an intentional trespass claim even though the complaint did not specify whether the trespass was intentional or negligent. *Id.* Second, the Howells say that Homesite "re-defined its policy definition of 'occurrence,'" because it describes it as an "accident" without specifying that the accident could be "continuous or ongoing." *Id.* at 16–17; Dkt. # 1 at 97. Third, the Howells say that Homesite claimed that the business activity exclusion could apply even though "[t]he [Underlying] Lawsuit does not allege any business activity on the Howell property." Dkt. # 139 at 17. Fourth, the Howells say that "Homesite suggested that the 'owned property' exclusion and

ORDER - 7

'damage to property of others' exclusions applied," even though the Underlying Lawsuit alleges damaged on SPLT's property. *Id.*

Homesite says that these examples are "not evidence of bad faith; to the contrary, Homesite expressly explains why coverage might be precluded." Dkt. # 143 at 6. The Court agrees. Each of the reservations discussed here have at least arguable merit. Thus, even if Homesite does not win on the merits of these issues, no reasonable person could determine that Homesite's detailed analysis of the insurance policy and the Underlying Lawsuit was "unreasonable, frivolous, or unfounded." *See Kirk*, 134 Wash.2d at 560, 951 P.2d at 1126. The Court concludes that, as a matter of law, Homesite's reservations in its September 20, 2021, letter were not made in bad faith.[2]

    3.    Refusal to defend under other policies

        a.    Limiting the September 2021 reservation of rights to the 2020-2021 policy

In the September 2021 reservation of rights letter, Homesite explained,

> Homesite is analyzing coverage under the policy in effective [sic] between February 25, 2020 to February 25, 2021 ("2020-2021 Policy") because that is the policy in effect at the time the Lawsuit was filed, as well as certain activities discussed in the Lawsuit. Homesite acknowledges issuing a subsequent policy with

---

[2] The Howells move to strike a report from Homesite's expert witness Danette Leonhardi, Dkt. # 135-3, and a declaration from Tom Hughes, Dkt. # 34. Dkt. ## 139 at 26; 87 at 3   The Howells say that the Leonhardi report is inadmissible because the expert witness offers opinions about the reasonableness of Homesite's actions, which is a question for the jury. Dkt. # 139 at 26. Further, Homesite criticizes the report for not citing an industry standard, and not analyzing all the alleged bad-faith actions taken by Homesite. *Id.* To the extent that the expert report makes legal conclusions, the Court agrees that the conclusions of law are inadmissible, and the Court does not consider them in resolving this motion. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). To the extent that the expert report did not analyze certain issues, the Court notes the shortcomings, but does not strike the rest of the expert report on that basis.
    The Howells say that Tom Hughes's declaration contains "inadmissible statements of fact." Dkt. # 87 at 3. This declaration did not affect the Court's analysis in this Order, so the Court declines to reach the issue.

ORDER - 8

policy period of February 25, 2021 to February 25, 2020 ("2021-2022 Policy"), though that policy was not effective until after the Lawsuit was filed. Dkt. # 1 at 89 n.1. In the letter, Homesite further explained that it "does not believe that [the 2021-2022] policy applies as it was not effective until months after the Lawsuit was filed, and thus, any alleged 'occurrences' or 'property damage' would not have occurred during the 2021-2022 Policy period." *Id.* at 96.[3]

The Howells say that this analysis is unreasonable, frivolous, and unfounded because "Homesite is re-writing its 'occurrence' definition into a claims made policy by picking the date the lawsuit was filed as the touchstone for a duty to defend obligation." Dkt. # 139 at 18. The 2020-2021 policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in a. bodily injury; or b. property damage." Dkt. # 80-4 at 7. Homesite says that its "initial decision to defend under the 2020-2021 Policy" was reasonable because it was "based on information available to Homesite at the time regarding the timing of the allegation made in the Underlying Lawsuit." Dkt. # 143 at 8.

While the complaint in the Underlying Lawsuit references events that occurred only before the lawsuit was filed on December 3, 2020, it also alleges ongoing harm from trespass, saying that the "trespass is continuing in nature."[4] Dkt. # 1 at 28. Homesite explains that it

---

[3] The Howells make a passing argument that the September 2021 reservation of rights letter does not analyze coverage under the 2018-2019 and 2019-2020 policies. Dkt. # 139 at 5. But the Howells do not argue that this failure rose to the level of bad faith. *See id.* at 17. Thus, the Court declines address the subject.

[4] In a previous order, the court denied Homesite's motion for summary judgment on its duty to defend under the 2021-2022 policy. Dkt. # 113 at 9. The Court noted that:

> [T]he 2021-2022 policy could conceivably provide coverage for property damage that occurred during the policy period. The Court acknowledges that the Underlying Lawsuit was filed on December 3, 2020, and therefore the complaint explicitly references only

ORDER - 9

believed that it did not owe a duty to defend under the trespass claim because, to the extent that the trespass was ongoing after SPLT sent the Howells a cease-and-desist letter, the trespass was intentional and not covered by the policy. Dkt. ## 143 at 5, 1 at 97. The Court previously noted that the complaint in the Underlying Lawsuit did not specify that the claim for trespass was for intentional trespass. Dkt. # 113 at 16. The Court concluded, "It is therefore conceivable that [SPLT's] trespass claim is one for negligent trespass." *Id.*

In *Webb*, the court determined that the insured acted in bad faith where "[t]he complaint was at least ambiguous regarding whether [the insured] sought damages for the nuisance claim" because the insurer "was required to liberally construe that ambiguity in favor of triggering a duty to defend." 12 Wash. App. 2d at 460, 457 P.3d at 1273. Here, Homesite construed ambiguity in the complaint to mean that the 2021-2022 policy did not apply. Thus, the Court cannot say, as a matter of law, that Homesite's decision not to defend the Howells under the 2021-2022 policy was reasonable.

b.   May 2023 reservation of rights letter

After the Court determined that Homesite has a duty to defend the Howells under the 2021-2022 policy, Dkt. # 113 at 18, on May 8, 2023, the company issued a reservation of rights letter for the 2021-2022, 2022-2023, and 2023-2024 policies, Dkt. # 97 at 4. The May 2023 letter said, "The policy language and coverage defenses reserved in [the September 2021] letter

---

events that occurred before that date. But several of the causes of action reference harm that is continuing in nature, thereby creating ambiguity as to whether the litigation would encompass alleged harm beyond that date.

*Id.* The Court then determined that Homesite has a duty to defend the Howells under the 2021-2022 policy. *Id.* at 18.

are incorporated by reference herein." Dkt. # 97 at 4. The letter then lays out Homesite's specific reservations regarding the policies. *Id.* at 5.

The Howells say that the May 2023 reservation of rights letter violated Homesite's duty of good faith because a reservation of rights letter "cannot 'incorporate by reference' the objections it raised in its reservation of rights to the 2020 policy—it had a chance to state specific objections to each of these policies and it elected not to do so." Dkt. # 139 at 13. But the Howells provide no authority to support this proposition. Further, as noted above, there is no specific format for a reservation of rights letter. *See Second Chance, Inc.*, 412 F. Supp. 2d at 1167. Thus, the Court rejects this argument. No reasonable person could find the May 2023 reservation of rights letter "unreasonable, frivolous, or unfounded" just because it incorporates the reasoning in another letter by reference. *See Kirk*, 134 Wash.2d at 560, 951 P.2d at 1126.

5. October 30 mediation

The Howells say that Homesite claims adjuster Andrea Cone's conduct at a mediation in the Underlying Lawsuit on October 30, 2023, evidences bad faith. Dkt. # 139 at 19. They say that Homesite elevated its interests above the Howells when "Ms. Cone attempted to force the Howells into accepting an unfavorable settlement offer from [SPLT], which would have terminated their constitutionally protected water rights . . . by informing them that Homesite would win its motion for summary judgment denying them a defense to the [SPLT] claims." [5] Dkt. # 139 at 19. Robin Howell says:

---

[5] The Howells request more time under Federal Rule of Civil Procedure 56(d) to obtain a declaration from Robert Howell Jr. because he was incarcerated when their attorney received Homesite's motion. Dkt. ## 139 at 7 n.5; 140 at 2. The Howells' attorney says that Robert Howell, Jr. can provide factual information about:

ORDER - 11

> Ms. Cone tried to get us to settle by forcing us to give up our certificates of water rights. We do not live in an area that is serviced by municipal water, and giving up our water rights means no access to water, and no electricity. Ms. Cone told us that we were going to lose in the coverage case and that if we did not give up our rights to water and electricity, the insurance carrier would not be providing a defense or paying any judgment to [SPLT]. At that time, summary judgments were pending in the coverage action. We were extremely distraught and could not believe what she was telling us.

Dkt. # 141 at 2.[6]

An insurer has a duty to "refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk." *Tank*, 105 Wash. 2d at 383, 715 P.2d at 1137. "In a reservation-of-rights defense, it is the insured who may pay any judgment or settlement. Therefore, it is the insured who must make the ultimate choice regarding settlement." *Id.* at 389, 715 P.2d at 1138.

Homesite says that the declaration is conclusory and does not establish that there is a genuine issue of fact. Dkt. # 143 at 11. But Robin Howell's declaration describes a situation in

---

> First, his interest in making sure the attorney appointed as his insurance defense counsel had experience in water rights cases; Second, his discussions with Catherine Clark on retaining her as defense counsel or as an expert to assist his insurance defense counsel; Third, his requests to Homesite, though insurance defense counsel, to retain Catherine Clark on his behalf; Fourth, Homesite's conduct in the October 2023 mediation, and its impact on him, and Fifth, his attempts to speak with Shawna Lydon, and the absence of any communication from defense counsel appointed by Homesite.

Dkt. # 140 at 5. Because the Court is denying Homesite's motion for summary judgment on alleged bad faith at the October 2023 mediation, additional details provided by Robert Howell, Jr. about the mediation are unnecessary. And the remaining information is irrelevant to the issues raised in the motion. Thus, the Court DENIES the request.

[6] Homesite says that the declaration violates Federal Rule of Evidence 408(a)(2) because evidence of "conduct or statements made during compromise negotiations" are not admissible. Dkt. # 143 at 11. But the Howells offer this evidence to prove bad faith in the Underlying Lawsuit, not "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Homesite says that the declaration is untimely and prejudicial, and moves to strike it under Federal Rule of Civil Procedure 37(c)(1). Dkt. # 143 at 10–11. Homesite says that the Howells did not provide any detail about the October 30 mediation until it filed this declaration with its response to Homesite's motion for summary judgment, in violation of Fed. R. Civ. P. 26(a), (e). But the Howells provided the same information in Robin Howell's declaration in a supplemental response to Homesite's Interrogatory No. 17 on November 30, 2023. *See* Dkt. 135-2 at 30–31. Homesite also cites this portion of the Howells' disclosure in its motion for summary judgment. Dkt. # 133 at 6. Thus, the Court rejects this argument.

ORDER - 12

which Homesite's representative took specific actions. Dkt. # 141 at 2. This is probative evidence supporting the Howells' claim of bad faith and establishes a genuine issue of material fact. *See Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir.), *amended,* 340 F.3d 767 (9th Cir. 2003). Thus, the Court denies summary judgment as to this issue.[7]

C.  CPA

To prevail on a CPA claim, a plaintiff must show: "(1) [an] unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to plaintiff in his or her business or property, [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash. 2d 778, 780, 719 P.2d 531, 533 (1986). Homesite says that the Howells have failed as a matter of law to establish an unfair trade practice, injury, and causation. Dkt. # 133 at 11.

The Howells say that Homesite committed unfair trade practices by "limit[ing] its duty to defend analysis to the 2020-2021 policy, and not all policy years implicated by the [SPLT] lawsuit." Dkt. # 139 at 21. The Howells also say that Homesite committed an unfair trade practice because Homesite's explanation for limiting its coverage in the first reservation of rights letter to the 2020-2021 policy "was unreasonable." *Id.*

The Howells say that they suffered an injury to their "business or property" from loss of use of funds from the attorney fees that they paid before Homesite began defending them in the underlying suit. Dkt. # 139 at 23; *see also Griffin v. Allstate Ins. Co.*, 108 Wash. App. 133, 148–

---

[7] In their response brief, the Howells did not address the issue of harm as to the bad-faith claims, saying, Homesite "does not offer any arguments on the absence of damages from a breach, or proximate cause." Dkt. # 139 at 14. For the first time in its reply, Homesite says that the Howells' bad-faith claims fail because "the insured must demonstrate actual harm resulting from the insurer's breach of duty." Dkt. # 143 at 3. The Court does not consider arguments raised for the first time in the reply. *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990).

ORDER - 13

49, 29 P.3d 777, 786, *opinion modified on denial of reconsideration*, 36 P.3d 552 (Wash. Ct. App. 2001) (noting that loss of use of money is a cognizable harm under the CPA).[8] The Howells also say that they were injured by the loss of use of their property because they do not have electricity or water because of the Underlying Lawsuit. Dkt. # 139 at 23.

The Howells' first injury—loss of use of funds—stems from Homesite's delay in accepting tender and appointing counsel for the Howells. The Howells' second injury—loss of use of property—arises from the appointed attorney's delays in resolving the Underlying Lawsuit. The Howells fail to explain how either of these injuries flow from the unfair trade practices they allege under the CPA. Thus, as the Howells do not show such causation, the Court must dismiss the CPA claim.

D.   IFCA

Under the IFCA, "[a]ny first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the

---

[8] The Howells also say that the fees that they paid their attorney to "investigate the claim" are cognizable injuries under the CPA. Dkt. # 139 at 22. Specifically, "[t]he Howells do not seek all of their attorney fees as damages under the CPA. Rather, they seek the time spent by counsel reviewing and analyzing the claim, before commencing active litigation." *Id.* at 22 n.12. Homesite says that the fees that the Howells paid to their attorney to review their case before taking them on as a client are considered attorney fees, not expert fees. Dkt. # 133 at 11–12. The Court agrees with Homesite.

In *Griffin*, the court determined that damages under the CPA included "the loss of use of funds paid for defense costs, and the cost of retaining an expert to review Allstate's file and testify about Allstate's handling of their claim. 108 Wash. App. at 147–48, 29 P.3d at 785–86. The test for damages "is simply whether the expenses were incurred as a 'direct result' of the breach of contract or bad faith." *Id.* But attorney fees are not damages under the CPA. *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wash. App. 553, 565, 825 P.2d 714, 721 (1992).

Here, the fees were incurred while this litigation was pending. Homesite filed this lawsuit on October 12, 2021. Dkt. # 1. The Howells attorney says that he spent two and a half hours reviewing the materials in December 2021. Dkt. # 140 at 4. After reviewing the materials, he "informed [the Howells] that they had claims to assert against Homesite, and [the attorney] would be willing to represent them under an hourly fee agreement." *Id.* The Howell's attorney began representing the Howells in January 2022. *Id.* The Howells' attorney spent the time "reviewing and analyzing" the claims to determine whether to represent the Howells. Thus, he was acting in his capacity as an attorney and not as an expert.

ORDER - 14

action, including reasonable attorneys' fees and litigation costs." RCW § 48.30.015(1). Homesite says that IFCA does not apply because it did not deny coverage or a benefit. Dkt. # 133 at 13. Homesite also says that the Howells do not establish compensable damages under IFCA. *Id.* The Howells repeat their arguments that attorney fees amount to damages when the attorney acts as an expert. Dkt. # 139 at 24. For the reasons discussed above, the Court rejects this theory of damages.

The Howells also say that Homesite denied coverage and refused to pay for defense counsel under 2021-2022 policy. *Id.* But the Howells cannot show damages associated with that denial of coverage because the Howells received a defense under the 2020-2021 policy and have offered no evidence to show that Homesite's defense would have differed if it had originally defended the Howells under both policies. Thus, as a matter of law the Court concludes that the Howells have not sustained actionable damages under the IFCA.

E.     Attorney Fees

The Howells ask the Court to award attorney fees in connection opposing the present motion for summary judgment. Dkt. # 139 at 27 (citing O*lympic S.S. Co. v. Centennial Ins. Co.*, 117 Wash. 2d 37, 52, 811 P.2d 673, 681 (1991)). Under *Olympic Steamship*, "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." 117 Wash. 2d at 53, 811 P.2d at 681. The Court previously awarded attorney fees to the Howells after the court granted summary judgment on the duty to defend. Dkt. # 149. The Court reasoned that "[b]ecause the Howells have prevailed on the duty to defend, and defense is an essential benefit of the insurance contract, the Howells are entitled to

ORDER - 15

attorney fees." *Id.* at 12.  Because the Howells have not prevailed on an essential benefit of the insurance contract in this Order, the Court declines to award fees.

## IV
### CONCLUSION

For the above stated reasons, the Court GRANTS in part and DENIES in part Homesite's Motion for Partial Summary Judgment.  The Court GRANTS the motion as to the CPA claim, the IFCA claim, and the bad-faith claim for (1) the "laundry list" of defenses in the September 2021 reservation of rights letter, (2) the analysis of coverage under policies that predated the 2020-2021 policy, and (3) the analysis in the May2023 reservation of rights letter.  The Court DENIES the motion as to the Howells' bad-faith claim for (1) the delay in responding to the tender, (2) the decision to defend only under 2020-2021 policy, and (3) Homesite's conduct at the October 2023 mediation.  The Court DENIES the Howell's request for attorney fees.

Furthermore, the Court DIRECTS the parties to (1) meet and confer regarding a proposed trial date and pretrial deadlines; and (2) by November 15, 2024, file a proposed schedule.  At this time, the Court has availability for trial on February 10, 2025, April 7, 2025, April 14, 2025, and additional dates thereafter.

Dated this 7th day of November, 2024.

John H. Chun
United States District Judge